[Baker v. Lehman, Weil & Co.]

# Baker *v.* Lehman, Weil & Co.

## *Assumpsit.*

(Decided April 23, 1914. Rehearing denied June 14, 1914.
65 South. 321.)

1. *Sales; Contracts; Certainty.*—The contract examined and held sufficiently certain to constitute a valid contract of sale of cotton as although the prices to be paid for the grades above and below the basis were not stated in figures, they were agreed to be settled at the prevailing differences at the time of delivery, which means differences in the market price.

2. *Same; Rights and Obligations of Parties.*—A contract which called for the delivery of cotton during designated months, and provides the method for determining the price, permits the seller to deliver at any time during the specified months, and binds the purchaser to have some one ready to receive and inspect on reasonable notice, and if possible, to agree on the price, and the buyer cannot remain wholly inactive and claim a breach by the seller's failure to perform; but it is enough for the buyer to demand the performance at the proper time and place, provided he is ready, able and willing to perform.

3. *Same.*—Where one contracts to buy cotton he need not inform the seller of the extent of his purchases about the time of the making of the contract, and the fact that he does not do so, and that unfavorable fluctuations in the market render him unable to pay for the seller's cotton, does not show a fraud on the seller.

4. *Same.*—The fact that the buyer in a contract falsely represented himself as being worth a million dollars, does not justify the seller in rescinding the contract, unless the buyer is unable to make the purchase at the proper time; deceit without injury not giving a cause of action nor furnishing ground for the rescission of the contract.

5. *Same; Evidence.*—A buyer suing for a breach of contract to deliver cotton may show that he has been for many years regularly engaged in the legitimate business of buying cotton for actual delivery, and that he has special arrangements with the bank to furnish money needed for cotton purchases as showing his means and facilities for handling the contract and business.

6. *Same.*—The ownership or possession of cotton by a seller at the time of the contract of sale was not essential to the validity of the sale, and the invalidity of the contract is not to be inferred from the mere fact that the seller had no cotton on hand at the time of making the sale, it appearing further that the seller was a merchant who regularly bought cotton from the neighboring planters.

7. *Same.*—The readiness and ability of the buyer to pay for goods contracted for is shown prima facie by his demand for their delivery made on the seller at the proper time and place.

8. *Same.*—Where the seller had not based his failure to perform on the inability of the buyer to accept and pay, very slight evidence of the buyer's readiness and ability to pay for the goods bought is sufficient.

9. *Same.*—It is not essential that a buyer keep or have the actual money on hand for payment to show his readiness and ability to pay for the goods contracted for, since his credit may enable him to obtain the money and pay the price.

10. *Same.*—Where the buyers were an·established cotton firm concurrently making and executing similar contracts of purchase throughout the same territory, and having arrangements with the bank to supply the money needed to pay for cotton contracted for, and demanded of the seller on the last day of the seller's optional period delivery of the goods sold, it sufficiently appeared that the buyers were ready and able to pay for the cotton, on which to base an action for the seller's failure to deliver.

11. *Gaming; Contracts; Futures.*—In the absence of affirmative evidence to the contrary the law will presume from a contract of sale of cotton, valid on its face, that an actual delivery was intended.

12. *Same.*—Where the seller sought to show the illegality of his cotton contract as a mere deal in futures, it was not competent to show that in several instances the buyer had settled other delivery contracts by a payment of margins without delivery.

13. *Custom and Usage; Explanation of Contract.*—Where the existence of a grade of cotton specified in a contract for the sale of cotton was generally known to the trade, the non-existence of such a grade in the local cotton trade was immaterial, for the use of the term by the parties to the contract was prima facie evidence that there was such a grade and that they understood its application.

14. *Appeal and Error; Harmless Error; Pleading.*—Where the same defense is available under other pleas no harm is done by sustaining demurrers to similar pleas, even if erroneous.

15. *Evidence; Judicial Notice; Common Knowledge.*—The courts judicially know that cotton is a world staple and that its price is fixed everywhere by the daily market quotations furnished by the cotton exchanges in the markets, and that cotton is bought and sold at prices graduated according to its classified quality as fixed by universal standards.

16. *Same; Parol Evidence; Contracts.*—Where the action is on a written contract set out in the complaint and a plea alleges the breach by plaintiff of a contemporaneous agreement alleged to be part of the consideration of the contract, the plea was demurrable, since the writing cannot be varied by a contemporaneous parol agreement, and because all prior and contemporaneous agreements are conclusively presumed to be merged in the written contract.

17. *Pleading; Explanation of Terms; Sufficiency of Complaint.*— In declaring on a contract containing trade terms, the complaint need not explain their significance, although such significance is not of judicial cognizance; if the terms are used technically and also have a common·meaning, it may become necessary to allege the meaning intended.

18. *Same; Conclusions.*—Where the seller seeks to avoid a contract because made in furtherance of an unlawful business, he must allege facts supporting that conclusion, and an allegation of general purpose of the buyer alone to resell the commodity in violation of law, does not show the illegality of the contract.

19. *Same; Issue of Law.*—A plea which alleges merely that the contract exhibited by the complaint is void for uncertainty, tenders an issue of law, and may properly be stricken.

20. *Contracts; Illegality; Business Violative of Law.*—Contracts made in furtherance of a business conducted in violation of law are illegal and unenforceable.

21. *Alteration of Instruments; Effect.*—Where a party to a written contract procures a third person to become a joint obligor therein, or make any change on the face of the paper varying its legal effect or operation, the alteration invalidates the contract in toto; the endorsement of a contract of guaranty by one of the parties without the consent of the other does not invalidate the contract.

22. *Same; Collateral Agreement; Effect.*—Where the guaranty by a third person that the purchaser would perform his part of the contract was endorsed on the paper containing the contract, but was a mere gratuity, neither the alteration nor cancellation of the guaranty affected the rights or liability of the seller.

23. *Trial; Reception of Evidence.*—A plaintiff may offer in evidence a contract on which he sues, without offering any collateral undertaking between plaintiff and a third person, or between defendant and a third person, although it appears on the same paper.

APPEAL from Coosa Circuit Court.

Heard before Hon. S. L. BREWER.

Action by Lehman, Weil & Co. against D. W. Baker for breach of contract to deliver 100 bales of cotton. From a judgment for plaintiff, defendant appeals. Affirmed.

The contract is as follows:

Terms of agreement entered into between D. A. Baker of Goodwater, Alabama, party of the first part, and Lehman, Weil & Company of Montgomery, Alabama, party of the second part, witnesseth: That in consideration of the mutual promises hereinafter set forth, and the sum of one dollar cash to each of said parties paid by the other, the receipt of which is hereby acknowledged, the party of the first part hereby sells to the party of the second part 100 bales of cotton to be

delivered in October and November, 1909, and to average in weight not less than 490 pounds, nor more than 510 pounds per bale, basis fours, reweighed and free on board the cars at Goodwater; the difference for the grades above and below basis are to be settled at the prevailing differences at the time of the delivery, reweights and grades to be settled at Goodwater and cotton paid for at Goodwater upon delivery. In the event of difference of opinion between the parties hereto mentioned as to the grade, each party to this contract is to select one arbitrator, and in the event they cannot agree, they are to select a third arbitrator, and both parties are bound by said arbitration. It is hereby understood and agreed that the said party shall deliver and accept the cotton according to the terms herein specified.

The complaint alleges the contract, plaintiffs' readiness, ability, and willingness at all times to carry out the contract on their part, and the failure and refusal of defendant to carry out said contract upon his part, in that he failed and refused to deliver the cotton called for in the contract, or any part thereof.

RIDDLE, ELLIS & RIDDLE, for appellant. If no delivery was intended the contract was void.—§ 3349, Code 1907; see, also, §§ 3351, 6473, 6475, Code 1907. Contracts in aid of or in furtherance of an unlawful business are illegal and unenforceable.—*Bluthenthal v. McWhorter,* 131 Ala. 642. Contracts for the sale of commodities must be certain as to the property, quantity and quality, the price to be paid, and the time and place of delivery, or the contract will be void for uncertainty.—*Elmore-Quillian Co. v. Parrish,* 54 South. 203. Plaintiff must first show a compliance with all the provisions of the contract on his part, or a readiness, willingness and ability to perform before he can complain of the

[Baker v. Lehman, Weil & Co.]

breach on the part of the seller.—*Elliott v. Howison,*
146 Ala. 568. It is not necessary to allege evidential
facts in a case.—*Baker v. Hutchinson,* 147 Ala. 636. A
material alteration of contract after its execution with-
out the consent of the parties sought to be charged ren-
ders the contract void and unenforceable.—*Brown v.
Johnson Bros.,* 127 Ala. 292. Where, in making a con-
tract involving financial responsibility, a party fraudu-
lently misrepresents or falsely states, or withholds his
financial standing, he perpetrates a fraud on the other
party to the contract.—*Pelham v. Grocery Co.,* 146 Ala.
445; 82 Ala. 581; 9 Cyc. 433 and 461. The consideration
of a contract may be impeached or contradicted by parol
testimony.—*Ragsdale v. Gresham,* 141 Ala. 308; 117
Ala. 603; 10 Ala. 163. Whatever the terms of the con-
tract are, parol testimony is competent to show fraud
even though it may result in contradicting the terms of
the contract.—*Bank v. Webb,* 108 Ala. 132; *Blackmon
v. Johnson,* 35 Ala. 252; 17 Cyc. 695.

WEIL, STAKELY & VARDEMAN, R. B. BARNES, and
PHARES COLEMAN, for appellee. This suit is not with-
in the doctrine announced by this court in the case of
*Elmore-Q. Co. v. Parrish,* 54 South. 203. It was not nec-
essary to define the meaning of the trade terms used
nor any custom or general usage in Goodwater in regard
to the meaning of the same.—9 Cyc. 582-3, 823-4. Pleas
4, 6 and 9 were defective, and properly sticken.—*Conti.
I. Co. v. Park,* 142 Ala. 650. Pleas 10, 11, 12, 13, 14
and 15 were also defective, since neither party can en-
graft into the contract by oral testimony a provision
not contained therein.—*Leftkovitch v. First Nat. Bank,*
152 Ala. 521. Pleas 16, 17 and 18 were defective, as
it is necessary that the party complaining should have
been prejudiced or injured by the fraud or deceit.—

*Bomar v. Rosser,* 131 Ala. 215; 9 Cyc. 431. Under the general issue advantage may be had of the fact that the contract was violative of public policy, contrary to statutes or void for uncertainty.—*L. & N. v. Allgood,* 113 Ala. 163; *Ala. G. L. I. Co. v. Mobile L. I. Co.,* 81 Ala. 429; 103 U. S. 261. It does not matter whether the seller had the cotton in his possession at the time the contract was made.—*Perryman v. Wolfe,* 93 Ala. 290; *Hooper v. Nuckles,* 39 South. 711. The law presumes that a contract was valid.—Authorities next above. Counsel discuss other assignments of error, but without further citation of authority.

SOMERVILLE, J.—The contract sued on is sufficiently certain as to all of its terms to constitute a valid and binding agreement, and the demurrer to the complaint was properly overruled. While the prices to be paid for the grades of cotton above and below 4's (shown by the evidence to mean "good middling") are not stated in figures, yet they are to be settled "at the prevailing differences at the time of delivery"; and, if there is any disagreement as to the proper grading of the bales as to quality, a practicable mode of settlement by arbitration is provided for. "Prevailing differences" obviously means differences in the market price, and whether or not there might be differences at a given time has no bearing on the ascertainable certainty of the price. If there were no differences, then the price would be 11 cents whatever the grade might be. But if, for example, "middling" cotton were delivered, the price would be 11 cents, less as many points as there were points of difference then prevailing between good middling and middling grades.

The case of *Elmore & Co. v. Parrish Bros.,* 170 Ala. 499, 54 South. 203, pronounced upon the insufficiency

[Baker v. Lehman, Weil & Co.]

of a provision in a contract for the sale of cotton that grades below "strict middling" (the price for which was specified) should be "at difference *to be agreed upon* at the time of the delivery" (italics ours). That case, which is cited and relied upon by appellant, clear· ly has no bearing on the sufficiency of the terms of the contract here involved.

We judicially know that cotton is a world staple, and that its price is approximate fixed everywhere by the daily market quotations furnished by the cotton exchanges in the world's great markets; that the staple is bought and sold at prices minutely graduated according to its classified quality as fixed by worldwide standards; that there is for every day in the year a specific and ascertainable market price for each of the designated grades; and that the slight variations in price for different localities are founded upon the varying cost of transportation to the centers of consumption and distribution.

In declaring upon a contract containing trade terms, though their significance is not of judicial cognizance, it is not necessary to expound their meaning in the complaint, however necessary it may be to do so in the evidence. An exception to this rule may perhaps be recognized where the terms are used technically and have also a common meaning, but the phrase "basis 4's" is not of that exceptional character.

By the terms of this contract the initiative rested upon the vendor. It was his duty to deliver 100 bales of cotton at any time during the months of October and November, and it was the duty of the vendee to have some one ready to receive and inspect it upon reasonable notice, and if possible to agree upon its classification, thereby determining the price to be paid. When these preliminaries were accomplished, it then devolved

upon the vendee to tender the amount of the purchase price to the vendor.

Under such a contract, however, the vendee could not remain wholly inactive and claim a breach by the vendor's failure to perform. But it is enough if he demands performance at a proper time and place, being then able, ready, and willing to perform on his own part. The complaint alleges all that is necessary in this respect to show a right of action in plaintiff.—*Long v. Addix* 184 Ala. 236, 63 South. 983; *Moss v. King, infra,* 65 South. 180; *Tinney v. Ashley,* 15 Pick. (Mass.) 546, 26 Am. Dec. 620; *Hapgood v. Shaw,* 105 Mass. 276; *Guilford v. Mason,* 22 R. I. 422, 48 Atl. 386.

The defendant interposed about 40 special pleas besides the general issue, to the most of which demurrers were sustained.

A plea which merely asserts that the contract sued on is in violation of a certain section of the Code, or that it is "of the kind commonly called futures" (as designated by section 3345 of the Code), states a mere conclusion of the pleader, and is deficient on apt demurrer. The elemental facts showing that the contract is within the inhibited class must be clearly averred.— *Continental Ins. Co. v. Parkes,* 142 Ala. 650, 39 South. 204.

A plea to an action on a written contract, set out in the complaint in full, which sets up plaintiff's breach of an extraneous agreement alleged to be part of the consideration of the contract sued on, is an attempt to vary and contradict the terms of a written contract complete in itself, and such a plea is subject to demurrer. This is so not only because the writing cannot be varied by a parol contemporaneous agreement, but also because all pricr and contemporaneous stipulations, verbal or written, are conclusively presumed to be merg-

[Baker v. Lehman, Weil & Co.]

ed in the complete written memorial adopted by the parties.—*Leftkovitz v. First National Bank,* 152 Ala. 521, 528, 44 South. 617.

It follows, of course, that if a guaranty by a third person that plaintiffs would carry out their contract was in fact indorsed upon the paper containing the principal contract, it was a mere gratuity, and neither its alteration nor cancellation could be any concern of defendants.

It follows, also, that plaintiffs might offer in evidence the principal contract without offering any collateral undertaking between plaintiffs and a third party, or between defendant and a third party, though it appeared on the same paper therewith.

It is the law that if one party to a written contract procures a third person to become a joint obligor therein, or makes any change on the face of the paper which varies its legal operation and effect, such alteration invalidates the contract in toto. But a collateral contract of guaranty does not affect the relations or obligations of the parties to the principal contract, nor in any way vary its effect. Hence the indorsement of such an undertaking on the writing, though without the consent of one of the parties, is without legal significance, or prejudicial effect.

It was not the duty of plaintiffs to inform defendant as to the extent of their cotton purchases about the time they bought from him; and the fact that they did not do so, and that unfavorable fluctuations in the market might have embarrassed them to such an extent as to render them unable to pay for defendant's cotton, does not show a fraud upon defendant with respect to his contract of sale.

Nor would the fact that plaintiffs represented themselves as being worth a million dollars, though in fact

they were not, justify defendant in the rescission of the contract, unless plaintiffs were unable to make the purchase at the proper time; for only in that event could defendant have been injured. It is not alleged that defendant rescinded the contract on account of this alleged false inducement to him to make it; nor that he was in any way injured thereby. Deceit without injury neither gives a cause of action, nor furnishes a ground for rescission of a contract.—*Davis v. Betz,* 66 Ala. 206; *Bomar v. Rosser,* 131 Ala. 215, 31 South. 530; 14 A. & E. Enc. Law, 137, 138; 9 Cyc. 431.

A contract made in furtherance of a business conducted in violation of law is itself illegal and unenforceable.—*Bluthenthal v. McWhorter,* 131 Ala. 642, 31 South. 559. But a plea, seeking to avoid a contract as being in furtherance of an unlawful business, must allege, not merely the conclusion of law, but the facts leading to that conclusion. And in the case last cited these facts are said to be knowledge of and participation by the vendor in the vendee's purpose to resell unlawfully, coupled with an actual sale by the vendee. A mere general purpose in the mind of the *vendee alone* to resell a commodity in violation of law does not render his contract of purchase illegal.

A plea which merely alleges that the contract sued on and fully exhibited by the complaint is void for uncertainty, tenders an issue of law and not of fact, and might properly be stricken from the file.

A number of special pleas allege that the contract is void for uncertainty in that there was no general custom or usage in the town of Goodwater by which any particular grade of cotton was known or designated as "4's." The existence of such a grade in the nomenclature of the local cotton trade in Goodwater was obviously of no importance. It was enough if such a grade was

known to the trade generally; and the use of the term by the parties is prima facie evidence that there was such a grade, and that they understood its application.

Some of the pleas allege that there was no prevailing difference in Goodwater between the prices of grades of cotton above and below "4's." If this were true as alleged, the only result would be that all the cotton purchased would be at the price of 11 cents a pound, and this would be no answer to the complaint.

Moreover, if there were any merit in the defenses set up in the two classes of pleas last above noticed, the benefit of them was available under the general issue; and this observation is true also of all of the pleas setting up the statutory invalidity of the contract.— *Alabama, etc., Ins. Co. v. Mobile Mut. Ins. Co.,* 81 Ala. 329, 1 South. 561, citing *Oscanyan v. Arms Co.,* 103 U. S. 266, 26 L. Ed. 539; *Woods v. Armstrong,* 54 Ala. 150, 25 Am. Rep. 671; 9 Cyc. 740 (II).

For the reasons above set forth, the sustaining of the demurrers to defendant's several special pleas did not involve any error prejudicial to him.

It was competent for plaintiffs to show that they were and had been for many years regularly engaged in the legitimate business of buying cotton, for actual delivery, all over a certain territory, not to show the legitimacy of the instant contract, but as tending to show their means and facilities for handling such business; and in that connection it was competent also to show that they had made special arrangements with local or other banks to furnish them the money needed for cotton purchases and payments.

Credit sufficient to enable them to raise the needed money is an adequate foundation for plaintiffs' *ability and readiness* to pay.—*McGehee v. Hill,* 1 Ala. 140 (3).

It was not competent for defendant to show that in several instances plaintiffs had settled other delivery

contracts by the payment of margins without delivery. Under the statute such evidence would stamp those particular contracts with presumptive illegality, but this presumption would not be extended to separate and disconnected purchases from other people. This does not deny the rule that, where an unlawful intent is sought to be imputed to a particular transaction, evidence may be admitted of other similar transactions exhibiting such an intent if shown to be nearly related in time and purpose, so as to illustrate a single and consistent design.—*Nelms v. Steiner,* 113 Ala. 562 (5), 22 South. 435.

However, the trial court, upon the withdrawal of plaintiffs' objections, seems to have allowed defendant full latitude as to such transactions, and he can have no complaint as to their former exclusion.

The two pages from plaintiffs' ledger, offered by defendant, showing an account with Lehman Bros., of New York and items of cotton sold to them, were, as far as we can see, wholly foreign to the issues of this case and were properly excluded.

The contract sued on is valid upon its face, and, in the absence of affirmative evidence to the contrary, the law will presume that an actual delivery of the cotton was intended.—*Perryman v. Wolffe,* 93 Ala. 290, 9 South. 148.

The ownership or possession of cotton by defendant at the time of his agreement to sell to plaintiffs was not at all essential to the validity of the transaction.—*Perryman v. Wolffe, supra; Hawley v. Bibb,* 69 Ala. 52. Hence its invalidity cannot be inferred from the mere fact that defendant, a merchant who regularly bought cotton from the neighboring planters, then had no cotton on hand, and that fact was not admissible in evidence; at least unless it was accompanied by other competent evidence of an intention not to deliver. A

[Baker v. Lehman, Weil & Co.]

careful consideration of the record does not disclose any legitimate evidence, admitted or offered, which could afford the necessary and reasonable inference that this contract was founded upon any agreement or understanding that it was to be discharged by the payment of margins without actual delivery. Defendant himself does not, in the course of his testimony, even hint at such an understanding, and, outside of the pleadings, the charge rests solely upon the unfounded argumentative insinuations of counsel.

We have now discussed all of those questions and principles which we deem to have been of importance in the trial and proper determination of the case. To prolong this opinion by a detailed discussion of every ruling of the trial court here complained of would be a useless expense to the state, and of no advantage to any one. We have examined each one of them, and do not find prejudicial error.

The trial court, on proper written request, gave to the jury the general affirmative charge in favor of the plaintiffs. It is insisted that this was erroneous: (1) Because the intention of the parties as to actual delivery of the cotton was on the evidence a disputed question of fact; and (2) because the readiness and ability of plaintiffs to accept and pay for the cotton during the period when it might have been delivered was not sufficiently shown to justify the withdrawal of that issue from the jury. We have already concluded adversely to the first contention.

Respectable authorities have held that a purchaser's readiness and ability to pay for the goods contracted for is sufficiently shown, prima facie, by his demand for their delivery made upon the vendor at the proper time and place.—*Squier v. Hunt,* 3 Price, 68 (citing *Wilks v. Atkinson,* 1 Marsh. 412) ; *Biggers v. Pace,* 5 Ga. 171 (citing 2 Wm. Saunders, 352, a).

[Baker v. Lehman, Weil & Co.]

And it seems to be well settled that very slight evidence is sufficient to show such readiness and ability.— *Hough v. Rawson,* 17 Ill. 588; *Kitzinger v. Sanborn,* 70 Ill. 146; *Bronson v. Wiman,* 10 Barb. (N. Y.) 406 (affirmed in 8 N. Y. 182); *Salmon Co. v. Box Co.,* 158 Cal. 567, 112 Pac. 454. This is, of course, especially true where the vendor has not based his failure to deliver upon the vendee's inability to accept and pay, and there is no serious contention of such inability on the trial. —*Salmon Co. v. Box Co., supra.*

In this state it has been specifically decided that in actions like this the doctrine of strict tender is not to be applied, and the purchaser of goods need not keep nor have the actual money for payment.

"The law, in requiring proof of ability in such cases as this, is to prevent either party from taking advantage of a breach of contract which he himself was not able to comply with; and yet, if the law were thus to be settled (i. e., as requiring the vendee to have the actual money), a man of undoubted ability to comply with his contract in point of fact would in theory be held incompetent. * * * The counsel for the plaintiff in error maintains that the only test of this ability would be having the money then in his possession. But would not his ability be just as certain if he had the money in bank, subject to his check, or in the hands of a friend subject to his order or demand, or, to go further, if the property in his possession, and his credit in the community were such that he could have promptly raised the money to meet his engagement, would it not be a certainty in a moral point of view, as positive as the other."—*McGehee v. Hill,* 1 Ala. 140, 146, 147.

And it was so held.

It would seem, also, that when an established mercantile firm is concurrently making and executing many

[Bixby-Theisen Co. v. Evans.]

other similar contracts of purchase throughout the same territory, this, in connection with a seasonable demand for delivery, would be prima facie sufficient to establish readiness and ability to accept and pay.

It appears that plaintiffs were doing this, and also that arrangements had been made with two banks to supply the money needed for this purchase, and, further, that they demanded of defendant the delivery of the cotton on the last day of defendant's optional period of delivery, without response from or action by him. On the evidence plaintiffs were entitled to a verdict as matter of law, and the jury were properly so instructed. In this view of the case the special charges requested by defendant were properly refused.

No question as to the measure of damages or the amount of the recovery being raised by defendant, discussion of those matters will be pretermitted.

The judgment is affirmed.

Affirmed.

ANDERSON, C. J., and MCCLELLAN and SAYRE, JJ., concur.