## SINCLAIR REFINING CO. v. WILSON GAS & OIL CO.

District Court, W. D. South Carolina.

Oct. 16, 1931.

Gaston, Hamilton & Gaston, of Chester, S. C., and Edward J. Hanson, of Charlotte, N. C., for plaintiff.

Hart & Moss, of York, S. C., W. F. Stevenson, of Cheraw, S. C., and Williams & Stewart and Sapp & Sapp, all of Lancaster, S. C., for defendant.

GLENN, District Judge.

The plaintiff has brought suit against the defendant for the recovery of a specified sum of money. The complaint alleges in substance that the defendant has been acting for a number of years as its agent or dealer in Lancaster county, S. C., and certain adjacent territory. The complaint alleges that the transactions since the 19th of October, 1929, have all been governed by a certain contract. The plaintiff alleges that it has furnished to the defendant at wholesale prices large quantities of petroleum products; that the defendant has paid for the major portion, but that the defendant still owes the plaintiff $8,756.40. The defendant has answered, and the plaintiff now makes this motion with respect to matters set up in the answer. The substance of the plaintiff's motion is in effect a demurrer to certain counterclaims set up in the answer and to strike out certain other alleged contentions therein. The counterclaims are based on certain alleged illegal conduct on the part of the plaintiff. Based on these counterclaims the defendant asks judgment against the plaintiff

for three times the amount in which the defendant claims that he has been injured by the illegal conduct of the plaintiff. It is clear that both counterclaims are based upon the Act of Congress of July 2, 1890, c. 647, 26 Stat. 209, 15 USCA § 15. This act under section 4 (15 USCA § 15), is as follows: "*Suits by Persons Injured; Amount of Recovery.* Any person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws may sue therefor in any district court of the United States in the district in which the defendant resides or is found or has an agent, without respect to the amount in controversy, and shall recover threefold the damages by him sustained, and the cost of suit, including a reasonable attorney's fee. (Oct. 15, 1914, c. 323, § 4, 38 Stat. 731.)"

The question for determination, therefore, is, so far as the demurrer to these counterclaims is concerned, whether or not counterclaims based on this statute may be set up in an action to collect for goods bought by defendant from plaintiff. This question has been before the courts a number of times. In some of the cases this statute has been held to sustain a defense and in a few cases counterclaims based on the statute have been allowed to stand. The leading case supporting the plaintiff's position is Connolly v. Union Sewer Pipe Co. (Ill. 1902) 184 U. S. 540, 22 S. Ct. 431, 46 L. Ed. 679; and the leading case on which the defendant relies is Continental Wall Paper Co. v. Louis Voight, etc., Co. (Ohio, 1909) 212 U. S. 227, 29 S. Ct. 280, 291, 53 L. Ed. 486. The situation in which we find ourselves in the case at bar is similar to that in which the court was placed in International Harvester Co. of America v. Oliver (C. C. Ky., 1911) 192 F. 59. In other words, it is a question of determining whether the case at bar comes within Connolly v. Union Sewer Pipe Co. or within the case of Continental Wall Paper Co. v. Voight, etc., Co. In our opinion the case at bar is much more akin to the Connolly Case than it is to the Continental Wall Paper Co. v. Voight, etc., Co. Case.

The counsel for the defendant have earnestly and ably contended that the case at bar is not controlled by the Connolly Case because the defendant was working under an agent's or dealer's contract with the plaintiff. Counsel contend that this agency contract places the defendant in such close relation to the workings of the unlawful combination (alleged in the answer) that the contract between the company and its agent is in furtherance of the forbidden agreement between the plaintiff company and other major oil companies, and is therefore unlawful in its very inception. We think that the contracts which have been held by the courts to be the basis of a defense or counterclaim in suits for debt have been contracts between the *major parties* to an agreement in restraint of trade, parties who occupy such an important place in the handling of a particular commodity as to substantially control the sale of that particular commodity, by reason of the very contracts on which suit is brought. These contracts are distinguished by the cases from the contracts between one of the major companies handling a commodity and its own subagents. Counsel contend that an important agent or dealer is much closer to the major company than the chance purchaser of an article over the counter. We agree, and that is just the situation pointed out by Judge Cochran in the International Harvester Co. Case, namely, that the distinction between the principle announced in the Connolly Case and that announced in the Continental Wall Paper Co. Case is clear; but the application to particular facts is not always so easily made. We conclude that the case at bar clearly falls within the doctrine of the Connolly Case. Any doubts which we might have about this matter are put at rest by the tendency of courts as revealed in later decisions. The United States Supreme Court, in Small Co. v. Lamborn & Co., 267 U. S. 248, 45 S. Ct. 300, 69 L. Ed. 597, is to our mind directly in point. This action was brought by the seller to recover from the buyer under contracts for the sale by one and purchase by the other of 450 barrels of refined sugar. The answer set up a special defense based on the Anti-Trust Act of July 2, 1890, and a demurrer to the defense was sustained on the appeal. The court held that it was not shown that the contracts were in themselves invalid under the Anti-Trust Act, *but only that they were collateral to a combination prohibited by it.* There the substance of the defense pleaded by the purchaser was that *the seller and others* had entered into a combination to manipulate interstate trade in refined sugar, with a view of increasing the price. The court held that there is nothing in the Anti-Trust Act which invalidates such a collateral contract or relieves the buyer from his obligation under it.

In the case of Higgins v. California Prune & Apricot Growers (C. C. A.) 16 F. (2d) 190, the defendant was not allowed to prove its counterclaim on the ground that the con-

tracts in suit were not connected with nor were they an inherent part of any conspiracy to restrain trade. It was further held that if the seller is an unlawful monopoly this does not affect his rights to recover on contracts for sale of his products.

■ In short, the defendant here, an agent like a hundred other agents selling the plaintiff's products, had no part in the determination of the major policies of the plaintiff, Sinclair Company. His contract with Sinclair was concerned only with the buying and selling of petroleum products within a limited area. However complicated or extensive the terms of his contract may be, it is not inherently invalid. The kind of contract to which the court would refuse to give its sanction would be one between the major oil companies themselves which had for its purpose an unlawful combination to control the prices of petroleum products generally. In the Continental Wall Paper Co. Case, Mr. Justice Harlan distinguishes between the two types of cases: "The present case [i. e. Continental Wall Paper Company v. Voight] is plainly distinguishable from the Connolly Case. In that case the defendant, who sought to avoid payment for the goods purchased by him under contract, had no connection with the general business or operations of the alleged illegal corporation that sold the goods. He had nothing whatever to do with the formation of that corporation, and could not participate in the profits of its business. His contract was to take certain goods at an agreed price, nothing more, and was not in itself illegal, nor part of nor in execution of any general plan or scheme that the law condemned. The contract of purchase was wholly collateral to and independent of the agreement under which the combination had been previously formed by others in Ohio. It was the case simply of a corporation that dealt with an entire stranger to its management and operations and sold goods that it owned to one who wished to buy them. In short, the defense in the Connolly Case was that the plaintiff corporation, although owning the pipe in question and having authority to sell and pass title to the property, was precluded by reason alone of its illegal character from having a judgment against the purchaser. We held that that defense could not be sustained, either upon the principles of the common law or under the anti-trust act of Congress. [See section 1–7 of this title.] The case now before us is an entirely different one. The Continental Wall Paper Company seeks, in legal effect, the aid of the court to enforce,

a contract for the sale and purchase of goods which, it is admitted by the demurrer, was in fact and was intended by the parties to be based upon agreements that were and are essential parts of an illegal scheme."

■ Under the authorities above quoted and under the facts in this case, the remedy which this particular act of Congress gives to those injured by violation thereof cannot be set up as a counterclaim in a suit such as this, for the recovery of the purchase price of gasoline and petroleum products sold and delivered.

■ As to the effect of the Conformity Act (28 USCA § 724), we agree that ordinarily the state practice with respect to counterclaims controls. But here the United States Supreme Court, in interpreting the federal statute which creates the remedy, has declared that the nature of the remedy afforded by the federal statute is such as to prevent it from being a proper counterclaim to a complaint for the recovery of purchase money for goods sold to a dealer for resale to the public. The reference to the Illinois practice which Justice Harlan made in the Connolly Case is the assignment of an additional reason for his decision. We do not take it to lay down the rule that the state practice was the sole reason for the decision against the propriety of the counterclaim.

For the reasons stated in the opinion filed herewith, it is ordered:

It is ordered and adjudged that the demurrer to the answer in regard to the counterclaims, asking for treble damages and based upon title 15, USCA, § 15, be and the same is hereby sustained, and that the allegations in the answer on which these counterclaims are based be and they are hereby stricken out.

It is ordered further that the demand for judgment based on these two counterclaims be and the same is hereby stricken out.

It is ordered further that the allegations in the last sentence of paragraph 4 of the answer, and in paragraph 6 of the answer, be, and hereby are, ordered stricken out; and that any other allegations of the answer seeking to establish or set up any rights in this suit under the act of Congress above referred to be, and hereby are, disallowed and ordered stricken out.

It is further ordered that the motion to strike out the defense wherein the plaintiff sets up payment be, and the same is hereby, refused.

Let the defendant serve its answer amended in conformity with this order within twen-

ty days hereafter; and the plaintiff shall have twenty days thereafter to plead to said answer as it may be advised, all of which is so ordered.