61 So.2d 7

### Ex parte RICE et al.
5 Div. 538.

Supreme Court of Alabama.
June 19, 1952.

Rehearing Denied Nov. 6, 1952.

Walker & Walker, Opelika, for petitioners.

Denson & Denson and Yetta G. Samford, Jr., Opelika, for respondent.

FOSTER, Justice.

This is a petition directed to this Court for a writ of mandamus to the circuit judge sitting in Lee County, Alabama, to require him to vacate his order overruling petitioner's motion to require plaintiff in the case of Sinclair Refining Co. v. Rice, pending in that court, to answer certain interrogatories propounded under Equity Rule 39, Code 1940, Tit. 7 Appendix.

The equity of the bill has been sustained on demurrer. Rice v. Sinclair Refining Co., 256 Ala. 565, 56 So.2d 647. A reference to the report of that case shows that the bill was to specifically perform a contract which granted complainant an option to purchase certain property, and which option has been accepted within its terms so as to justify such relief according to the allegations of the bill. Briefly stated, the contract is alleged to have been made between them on

January 8, 1936, whereby defendants agreed to build a gasoline filling station on a certain lot owned by defendants in Auburn, Alabama, and to lease the same with the lot to the plaintiff for a period of ten years at a stipulated monthly rental, with an option to extend the term for another five years, and with another option that plaintiff, as lessee, would have the right to purchase the property for a specified sum at any time during the lease or any extension thereof. The bill alleges that plaintiff exercised the option and tendered payment of the stipulated sum and demanded a conveyance. On defendants refusal, plaintiff filed this bill for specific performance and paid the money into court and offered to do equity. After its equity was upheld on appeal to this Court, defendants filed an answer and propounded interrogatories to plaintiff. Certain of those interrogatories the plaintiff declined to answer, and defendants filed a motion to require them to be answered. The court overruled the motion. This petition is to review that ruling. The trial judge has waived the issuance of a rule nisi, and demurred to the petition and also answered it. Submission is on the demurrer and answer. They present the same questions for decision by this Court.

It is shown by the record, a certified copy of which is attached to the petition, that the particular reason for not answering the interrogatories is that they call for a disclosure of matter immaterial to the issues made by the bill and answer. So that, we will first seek to determine whether the matter in the answer to which they relate is a good defense to the right of plaintiff to specific performance. That is the question argued by counsel.

The pleadings show that the parties operated under the contract until shortly before the expiration of the lease, when plaintiff undertook to exercise its option to purchase the property. The defense is that the execution of the contract containing the option right, now sought to be enforced, was made and entered into in 1936, as a feature of a nation wide scheme to create a monopoly; and that the Sinclair's further unlawful plan or scheme to lease or sub-lease these gasoline filling stations to local dealers, either directly or through its regional commission agent for limited terms or at its will thereby placing such dealers under the control of Sinclair Refining Company as to the products to be handled by them; and that by express or implied agreements these dealers were required to handle Sinclair's products and its sponsored products exclusively and without deviation. The answer further alleged that the lease-option in the instant case was an integral part of said unlawful scheme for restraining and monopolizing commerce among the states and within the State of Alabama, which could not be perpetuated successfully without the instant lease-option contract and others of like tenor; that as a part of its said plan or scheme the complainant had drafted or had had drafted the form of lease and option used in this case and had used the same on numerous occasions in furtherance of its said plan or scheme, and was regularly using the same, or substantially the same, at the time the instant lease-option was executed; that the lease-option contract that Sinclair Refining Company induced the present petitioners and others to enter into for the lease and option sale of their property were necessary links in the chain of contracts of Sinclair Refining Company to acquire, maintain and preserve an illegal restraint in commerce; that at the time of the execution of said lease-option in the instant case it was then and is now against the public policy of this State and of the Federal Government to aid in the enforcement of agreements made with intent to acquire a monopoly or in restraint of trade; that plaintiff was at that time engaged on a large and nation wide scale in every phase of the petroleum industry, and that the acquisition of the station in question, and additional stations throughout the land, would be a vital step in perfecting a virtual petroleum monopoly, and that the acquisition of the instant property was with the intent to control this retail outlet of petroleum to restrain a competitor from using the same.

Petitioners cite the case of Standard Oil Co. v. United States, 337 U.S. 293, 69 S.Ct.

1051, 93 L.Ed. 1371. That was a suit by the United States against Standard Oil Company for a declaratory judgment to the effect that its exclusive supply contracts with independent dealers in petroleum products and automobile accessories are illegal, and sought an injunction. The court held that Standard Oil Company violated section 3 of the Clayton Act, 15 U.S.C.A. § 14, and therefore did not consider the application of the Sherman Act, 15 U.S.C.A. §§ 1, 2 and 3. It was there observed that the Clayton Act is narrower than the Sherman Act. The Sherman Act prohibits a contract in restraint of trade or commerce, and declares the same void. It also makes it a crime to monopolize or attempt to monopolize any part of trade or commerce between the states.

The Clayton Act, section 3, supra, applies to one engaged in commerce (interstate) and makes it unlawful for him to lease, sell or contract to sell goods, wares or merchandise, machinery, supplies or other commodities for use in consumption or resale in the United States on condition or understanding that the lessee or purchaser shall not use or deal in the goods of a competitor of the seller, "where the effect of such lease, sale, or contract for sale or such condition, agreement, or understanding may be to substantially lessen competition or tend to create a monopoly in any line of commerce."

There is no attempt to defend on the idea that the contract here in question is a lease, sale or contract to sell goods on condition that the lessee or purchaser shall not use or deal in goods of a competitor where the effect is to substantially lessen competition or tend to create a monopoly.

There is here involved no lease or sale of a commodity, nor exclusive supply contract as in the Standard Oil case, supra. The defense here is wholly outside the narrow limits of the Clayton Act. So we inquire whether it shows a contract in restraint of trade or commerce under the Sherman Act. Certainly, on its face the contract to sell to plaintiff the filling station to be built at Auburn is not in restraint of trade or commerce. The contract has no apparent effect as a restraint on commerce nor to lessen competition.

The answer attempts to set up as a defense, briefly stated, the fact that the plaintiff as the lessee and purchaser of the property acquired it for the purpose of using it as an integral part of an unlawful scheme for restraining and monopolizing commerce in petroleum products among the states and within this State.

We believe that it is a sound principle that when premises are leased for the *express* purpose of enabling the lessee to accomplish an unlawful purpose, the agreement is void and there can be no recovery at the suit of either party against the other. Baker v. Lehman, Weil & Co., 186 Ala. 493(20), 65 So. 321; 13 Corpus Juris 518, section 478; 17 C.J.S., Contracts, §§ 292, 293(c), pages 680, 681. But if the unlawful purpose is entertained and consummated by the purchaser or lessee, and without the knowledge of the seller or lessor, he would have a right to avoid the agreement and refuse completion, 17 C.J.S., Contracts, § 291, page 679, note 63, or to enforce it, Bluthenthal v. McWhorter, 131 Ala. 642, 31 So. 559; Musco v. Torello, 102 Conn. 346, 128 A. 645, 42 A.L.R. 1036; 166 A.L.R. 1374; Rundle-Spence Mfg. Co. v. Jakopichek, 201 Wis. 463, 229 N.W. 550; Harbison v. Shirley, 139 Iowa 605, 117 N.W. 963, 19 L.R.A., N.S., 662, even though he knew of the illegal purpose, if he did not become a party to it.—58 C.J.S., Monopolies, § 93, page 1110, note 78.

The argument of counsel indicates that the trial court held that the matter set up in the answer was not a good defense upon the principle of the case of Dreyfus Bros. v. Corn Products Co., 204 Ala. 593, 86 So. 386, which was largely in reliance upon the case of D. R. Wilder Manufacturing Co. v. Corn Products Refining Co., 236 U.S. 165, 35 S.Ct. 398, 59 L.Ed. 520. See, also, 36 Am.Jur. 656, section 198.

We think the principle of those cases relates to a different situation from that here involved. In neither of those cases was there a lease or purchase of property for the purpose of carrying on an unlaw-

ful enterprise, contrary to public policy, and a use of it for that purpose. See, also, the principle analyzed by us in Bankers and Shippers Ins. Co. v. Blackwell, 255 Ala. 360, 51 So.2d 498. Sinclair Refining Co. v. Wilson Gas & Oil Co., D.C., 52 F.2d 974.

■ In order for the answer which is here presented to be a good defense to the right of plaintiff to specific performance, the use contemplated by the lessee purchaser, and which was actually put into operation, must have been directly and not merely incidentally influential in effecting a monopoly or a restraint of trade. The property must have been more directly involved in the transaction than just a mere incident to it, Camors-McConnell Co. v. McConnell, C.C., 140 F. 412; Sinclair Refining Co. v. Wilson Gas & Oil Co., D.C., 52 F.2d 974,—or collateral to it. 36 Am.Jur. 656, section 198; 58 C.J.S., Monopolies, § 91, page 1109.

It is also important to consider the fact that the defendants in this suit have had the benefit of this contract for practically fifteen years, during which time there appears to have been no effort on their part to repudiate it by reason of the matters alleged in the answer. It does not appear when they acquired information about it. It is not intended by that statement to say that thereby the defendants are estopped from setting up the illegality of the contract. Standard Chemical Co. v. Barbaree, 239 Ala. 601, 195 So. 892; Ellis v. Batson, 177 Ala. 313, 58 So. 193.

Apparently, it is only when the defendants have determined that it is not to their interest to carry out the contract that they now seek to avoid it on account of a matter which does not concern them personally. Their status naturally does not appeal to the favor of the Court, and in order to sustain such a defense by a party who has reaped its benefits, the interest of the public in respect to the observance of the contract must be of a dominating character, Steele v. Drummond, 275 U.S. 199, 48 S.Ct. 53, 72 L.Ed. 238,— and the effect of the contract must be an important feature of the plan.

■■ Specific performance of the contract will not be refused on such a claim unless it directly tends to injure the public or is detrimental to the public. Bankers & Shippers Ins. Co. v. Blackwell, 255 Ala. 360(15), 368, 51 So.2d 498. The principle that contracts contravening public policy are unenforceable should be applied cautiously and only in cases plainly within the reason for it. It is repeated often in the cases that there must be a dominating public interest, Twin City Pipe Line Co. v. Harding Glass Co., 283 U.S. 353, 51 S.Ct. 476, 75 L.Ed. 1112; A. C. Frost & Co. v. Coeur D'Alene Mines Corp., 312 U.S. 38, 61 S.Ct. 414, 85 L.Ed. 500, and the transaction must be more than an incident in the scheme.

In order to defend a suit on a contract for the lease and sale of property, it must therefore be sufficiently shown by the facts alleged that the purpose of its lease and purchase was and has continued to be to conduct in it a business which is opposed to the dominating public interest. Allegation must be made of the acts done or proposed to be done under alleged circumstances and conditions sufficient to create or tend to create a monopoly contrary to such public interest, and to show that the transaction in question is a material feature of it, in order that the court may determine from the facts so alleged whether a monopoly at common law or in violation of the statute has been properly set up and the relation of the transaction to it, with the result that if those facts are proven the party pleading them would be entitled to prevail. It is not sufficient to allege the existence of a monopoly, or merely to repeat the words of the statute, or to recite mere conclusions of the pleader. The general allegations that the combination and agreement are unlawful and illegal, and that the transaction in question is an integral part of the scheme are not sufficient nor that said contract has resulted in an unlawful monopoly. Foster v. Shubert Holding Co., 316 Mass. 470, 55 N.E.2d 772; 58 C.J.S., Monopolies, § 100, page 1122; Baker v. Lehman, Weil & Co., 186 Ala. 493(18), 65 So. 321.

138

In the Standard Oil case, supra [337 U.S. 293, 69 S.Ct. 1063], from the facts stated the conclusion was drawn that it conducted its business under the stated circumstances which showed that the effect was to " 'substantially lessen competition or tend to create a monopoly' " in its line of commerce.

It is clear that the allegations of the answer here involved do not meet the requirements of good pleading. The answer does not allege facts to show that at the present time plaintiff is using said property contracted to be purchased, or that it intends to use it, to monopolize trade or commerce or is attempting to do so, nor does it show how the acquisition of a service station in Auburn, Alabama, which plaintiff has been using for fifteen years, has become an influential part of a nation wide scheme to restrain commerce, or even to affect competition in Auburn, so as to enable defendants to repudiate their contract.

Interrogatories may not be used to obtain information necessary to a cause of action or a defense upon which to make up the claim. That is a fishing expedition. Ex parte Rowell, 248 Ala. 80, 26 So.2d 554.

It is our view that the interrogatories here submitted are of a fishing sort and en masse covering such a vast range of detail that it would be an improper burden upon the plaintiff to be required to make answer to them and furnish evidence of a crime alleged to have been committed by it. Title 10, section 199; Title 57, section 108, Code.

We have reached the conclusion that we should not issue a mandamus to the judge of the court to require him to set aside his order relieving the plaintiff of the duty to answer the interrogatories and instead to require him to order the plaintiff to answer them.

Petition for writ of mandamus denied.

LIVINGSTON, C. J., and BROWN and SIMPSON, JJ., concur.