This is an appeal from a summary judgment for one defendant in a case involving a medical malpractice claim brought pursuant to the Alabama Medical Liability Act and a products liability claim brought pursuant to the Alabama Extended Manufacturer's Liability Doctrine. Yvonne Beverly, minor daughter of Mary Beverly, came to Cooper Green Hospital in Jefferson County, Alabama, in labor, on January 2, 1983. Doctors at Cooper Green Hospital delivered her baby boy and discharged her three days later. She returned to the hospital the day after she was discharged, complaining of chills and fever and pain in her pelvic region. She was seen by Dr. Michael Chandler at that time. Dr. Chandler noted that she had a post-partum infection and prescribed antibiotics and medications to relieve pain and fever. This is the only instance in which Dr. Chandler saw Yvonne Beverly.
On January 8, 1983, Yvonne Beverly returned again to the hospital, complaining of seizures. She was treated by another doctor, who diagnosed eclampsia and ordered that she be given four milligrams of magnesium sulfate IV soluset. She collapsed while in the X-ray department of the hospital. A blood sample revealed that Yvonne Beverly had been given approximately ten times the prescribed dosage. Her mother, Mary Beverly, filed this action against Cooper Green Hospital; a nurse; certain named doctors, including the defendant involved *Page 923 
in this appeal, Dr. Michael A. Chandler; and American Quinine, Inc., the manufacturer of the magnesium sulfate IV soluset. Her complaint asserted that Yvonne Beverly had suffered brain damage and neurological injuries as a result of the overdose, and she sought general damages and costs.
Over the course of the case, the trial court entered summary judgment for various defendant doctors. Defendants Cooper Green Hospital and Lanette Wilkerson, R.N., entered into a pro tanto, pro ami settlement with Mary Beverly, as did American Quinine, Inc. After the settlement with Cooper Green Hospital, an article was published in the Birmingham Post-Herald on December 21, 1988, which contained a statement by one of Mary Beverly's attorneys, Jeffrey W. Bennitt, in which Mr. Bennitt said, in essence, that Dr. Chandler had committed professional negligence in his treatment of Yvonne Beverly. Discussions ensued between Dr. Chandler's attorney and Mr. Bennitt, culminating in Mr. Bennitt's promising to dismiss the case against Dr. Chandler in return for Dr. Chandler's promise to refrain from bringing a lawsuit alleging abuse of process or malicious prosecution or based upon what Dr. Chandler claimed was a defamatory statement.
This agreement, that Dr. Chandler would be dismissed as a party defendant, was confirmed in a letter dated January 10, 1989. However, on April 10, 1989, Mr. Bennitt's law partner and co-counsel, John F. Kizer, Jr., advised the attorney for Dr. Chandler that Mary Beverly had decided to repudiate the agreement. On September 12, 1989, Dr. Chandler filed a motion for summary judgment, supported by his own affidavit and that of his attorney, Walter W. Bates. Mary Beverly filed a motion in opposition, with the supporting affidavit of Jeffrey W. Bennitt. Mr. Bennitt contended, in opposition, that while he had informed Mr. Bates that Dr. Chandler would be dismissed as a party defendant, he had done so without authority from Mary Beverly.
The trial court held an in camera examination of the employment contract between Mary Beverly and her attorneys. The trial court entered a summary judgment, made final pursuant to Rule 54(b), A.R.Civ.P., on the grounds that "plaintiff specifically authorized and gave authority to counsel to settle or resolve the case." (C.R. 859.) Mary Beverly appeals from this judgment.
We must determine whether Mrs. Beverly can repudiate a settlement agreement entered into by her attorney who has a written contract authorizing him to settle or resolve the case on her behalf. Her attorneys now argue that the contract of employment between them and Mary Beverly is void as against public policy, and thus that the trial court erred in entering the summary judgment for Dr. Chandler. We have carefully reviewed the record and the evidence in this case. Because of the specific authority given to the attorneys by the contract, we must affirm the summary judgment.
The contract Mary Beverly made with her attorneys and the settlement agreement made by her attorneys with Dr. Chandler are both governed by principles of contract law and are as binding on the parties as any other contract is. It is elementary that an agreement, with consideration, between two or more contracting parties, with a legal object and with legal capacity, is binding on the parties. Gray v. Reynolds,514 So.2d 973 (Ala. 1987), quoting Freeman v. First State Bank ofAlbertville, 401 So.2d 11 (Ala. 1981).
This Court has stated that agreements made in settlement of litigation are as binding on the parties as any other contracts are:
 "Section 34-3-21, Code of Alabama 1975, as amended, vests in an attorney authority to bind his or her client in all matters that relate to the cause, including the right to settle all questions involved in the case. Such agreements are not only authorized, but encouraged, to promote justice and fair dealing and to terminate properly or prevent litigation."
King v. Travelers Ins. Co., 513 So.2d 1023 (Ala. 1987), quotingBrocato v. Brocato, *Page 924 332 So.2d 722 (Ala. 1976). Indeed, there is a strong policy in the law favoring compromise and settlement of litigation.Porter v. Porter, 441 So.2d 921, 923 (Ala.Civ.App. 1983).
Usually, an attorney cannot settle a client's case without consultation with the client. Davis v. Black, 406 So.2d 408
(Ala.Civ.App. 1981), Nero v. Material Sales Co.,340 So.2d 454 (Ala.Civ.App. 1976). Canon 7 of the Code of Professional Responsibility of the Alabama State Bar addresses this as well. However, a client can give express authority to his or her attorney to act, by signing an employment contract that gives this authority, as was done in this case.
The case before us presents a situation similar to the one we considered in Mitchum v. Hudgens, 533 So.2d 194 (Ala. 1988). We held in Mitchum that an attorney, employed by a liability insurer to defend a medical malpractice claim filed against its insured, could settle the claim against his client without prior notice to or consent from the client, by virtue of a contractual provision expressly authorizing the insurance company to settle the claim at its discretion. In Mitchum, the language in the policy read: "We have the right to investigate, negotiate and settle any suit or claim, if we think that is appropriate." Id. at 196. This language is very similar to the language contained in the contract between Mary Beverly and her attorneys. The relevant portion of their agreement read: "I give and grant unto him full power to act as my attorney, to institute suit on said claim, to prosecute said suit, to settle said claim at his discretion before or after suit is instituted and to take any and all steps which he deems proper and desirable."
In this case, the contract entered into between Mary Beverly and her attorneys expressly authorized them to settle or resolve her case. The authority given them was clear and unequivocal, with no limitations or restrictions expressly placed upon the power to compromise or settle. Furthermore, the record is devoid of any evidence to indicate that Mary Beverly ever revoked this express grant of authority to her attorneys.
As stated above, Mary Beverly contends that the agreement she had with her attorneys is void as an illegal contract against public policy. The rule has been stated as follows:
 "As a general principle, a party may not enforce a void or illegal contract either at law or in equity. Thompson v. Wiik, Reimer Sweet, 391 So.2d 1016 (Ala. 1980). However, the principle that contracts in contravention of public policy are not enforceable should be applied with caution and only in cases plainly within the reason on which the doctrine rests. Ex parte Rice, 258 Ala. 132, 61 So.2d 7 (1952); Lowery v. Zorn, 243 Ala. 285, 9 So.2d 872 (1942). The true test to determine whether a contract is unenforceable because of public policy is whether the public interest is injuriously affected in such a substantial manner that private rights thereunder should yield to the public interest. Colston v. Gulf States Paper Corporation, 291 Ala. 423, 282 So.2d 251 (1973)."
Taylor v. Martin, 466 So.2d 977, 979 (Ala.Civ.App. 1985). This contract between Mary Beverly and her attorneys does not meet this test and is therefore not void or illegal.
While we conclude, for the reasons stated above, that the judgment of the trial court is due to be affirmed, we would note that this case presents an example of the need for open and complete communication between attorney and client, so as to avoid any possible misunderstanding.
AFFIRMED.
HORNSBY, C.J., and JONES, HOUSTON and KENNEDY, JJ., concur. *Page 925