189 So. 186

**GRAYBAR ELECTRIC CO., Inc., v. CURRY, Com'r of Revenue, et al.**

**3 Div. 291.**

Supreme Court of Alabama.

May 25, 1939.

Rehearing Denied June 8, 1939.

Cabaniss & Johnston and Gerry Cabaniss, all of Birmingham, for appellant.

117

Thos. S. Lawson, Atty. Gen., John W. Lapsley, Counsel, Dept. of Revenue, of Montgomery, and J. Edw. Thornton, Asst. Counsel, of Birmingham, for appellees.

KNIGHT, Justice.

Bill for declaratory judgment to determine whether certain sales for which the state, through its tax authorities, has attempted to assess against the complainant a tax of two per cent, under the provisions of an Act of the Legislature of Alabama, Gen.Acts 1936–37, Sp.Sess., p. 125, entitled An Act to amend an Act, entitled "An Act to provide for the general revenue of the

State of Alabama, approved July 10, 1935," are taxable under said Act, or whether said sales fall within, and are protected by, the Commerce Clause of the Federal Constitution. If the sales, under the facts shown by the record, were in interstate commerce, the tax attempted to be imposed thereon would be illegal and void.

The complainant took the position in the lower court, and renews its contention here, that it was not taxable because, (a) the transactions in which it had engaged were not sales within the meaning of said act, and (b) even if said transactions constituted "selling at retail" within the meaning of the act, such sales were made in interstate commerce and under the Commerce Clause of the Federal Constitution, the state was powerless to tax them.

The complainant's principal or head office is in the City of New York, N. Y. It maintains division headquarters for the southeastern states in Atlanta, Georgia, and it also has an office and stock of goods consisting of a small quantity of standard articles of electrical supplies suitable for storage in its Birmingham, Alabama, warehouse.

The cause was tried upon the pleadings and an agreed statement of facts, in which it was admitted that facts stated in the complaint, with certain exceptions not here important to be stated, were true. The lower court sustained the state's contention that the sales were taxable under its sales tax law.

From the record it appears: When orders are received by the complainant for large quantities of goods, it is now the practice of complainant, and it has been its practice for a number of years, to order such goods from manufacturing companies located outside of the State of Alabama, and direct that shipment of the goods so ordered be made by the manufacturer direct to complainant's customer within the State of Alabama. When orders are received by complainant for goods to be manufactured to the purchaser's specifications and when orders are received by complainant for goods not carried in the Birmingham Warehouse, it is now and has been for a long time complainant's practice to order such goods from the factory manufacturing the same, located outside the State of Alabama, with directions to the manufacturer to ship the goods direct to the customer within the State of Alabama.

It further appears that the sum of money—$2,636.93—which the respondents claim to be due the state constitutes two per cent of gross receipts received by the complainant totaling $131,846.33, said sum being complainant's gross receipts from four classes of transactions as follows:

Class A. During the year 1937 sales were made aggregating $32,689.11 under the following circumstances: Each sale within this class was made after an order had been received from complainants, said order being in substantially the following form:

"Graybar Electric Company, 1529 First Avenue North, Birmingham, Alabama. Please furnish us the following articles, 204—1000 Watt, 260 Volt, Mazda Lamps at $4.75 each. It is agreed that the material covered by this contract shall be manufactured at the plant of the General Electric Company located in the State of Ohio and shipped in interstate movement from said plant to destination, shipped via freight to Tennessee, Coal, Iron and Railroad Company, Construction Stores, Fairfield, Alabama. (signed). Tennessee Coal Iron and Railroad Company, by Richard Shively, Purchasing Agent."

Complainant on receipt of such order would then order the specified articles from General Electric Company, located in Ohio, and instruct said company to ship the same f. o. b. factory in Ohio, consigned to the customer at Fairfield, Alabama. General Electric Company would then ship the goods f. o. b. factory to complainant's customer in Alabama. After each such shipment the General Electric Company would send its invoices to the complainant, and complainant would send its invoices to the respective customers. The goods were billed by the General Electric Company to complainant, and the latter paid the same. The complainant rendered its bills to its customers and the same were paid by them to the complainant. Of the sales mentioned in this class which aggregate $32,689.11, $27,785.74 were for goods not carried in complainant's stock in Alabama, and could not have been purchased by complainant in Alabama, except from a competitor, and if complainant had purchased them from a resident competitor, it could have realized no profit on the transaction. That $4,903.37 was received for goods shipped from the out-of-state manufacturer to complainant's resident customer by direction of complainant, although complainant at the time

had goods of the identical kind as those so sold in its stock in Alabama.

Class B. During the said year 1937, sales were made aggregating $88,684.80. Each sale within this class was made in the same manner and under same circumstances as sales referred to in Class A, except that the orders received by complainant did not specify that the goods should be manufactured at a plant outside of the State of Alabama. However, none of the goods so ordered were carried by complainant in stock within the State of Alabama, and none of the goods could have been purchased in Alabama, except from a competitor of complainant, and if purchased from a resident competitor, complainant could not have made a profit on such transactions. Upon receipt of orders covering the goods sold, and falling within this classification, the complainant ordered the manufacturer, located outside of the State of Alabama, to ship the goods consigned to its Alabama customer f. o. b.

Class C. During the said year 1937, sales aggregating $2,680.62 were made. Each sale within this class was made in the following manner: Complainant maintains a warehouse in Atlanta, Georgia, and when complainant received in Birmingham, Alabama, from an Alabama customer an order for goods which are not stocked by complainant in Birmingham, Alabama, but which are stocked in complainant's warehouse in Atlanta, Georgia, the goods so ordered by the Alabama customers are shipped direct to such customers from the Atlanta Warehouse on instructions by the Birmingham, Alabama, office of complainant. None of the goods included in the sales under this classification were carried by complainant in its stock in Alabama, and could not have been purchased by complainant in Alabama, except from a competitor, and on a purchase from a resident purchaser complainant could have made no profit.

Class D. During said year 1937, sales were made to customers in the further aggregate sum of $7,792.30. Each of said sales included within this classification consisted of large quantities of goods (100 lbs. or more) and were made in the same manner and under the same circumstances as the sales referred to in Class B, all goods so sold having been shipped, by direction of complainant, by manufacturers outside the State of Alabama to complainant's customers in Alabama, in the same manner as described in Class B. However, it is admitted that complainant carried in stock in Birmingham goods of the same kind as those included in sales under this classification D. In this connection it is alleged in substance: It is now and has been for a number of years the practice of complainant and the practice of other companies engaged in similar business to order shipments of goods made direct to the customer from the factory where large quantities of goods are ordered and where time will permit and the manufacturer allows freight to the destination, even though goods of the same identical kind and type are carried in stock within the State of Alabama, for the reason that manufacturers prepay or allow transportation charges to destination, provided orders for 100 lbs. or more of such goods are received. That if this practice were not followed and if complainant filled such orders out of its stock in Birmingham, it would be required, in order to make the same profit, to charge the customer with the cost of handling the goods at Birmingham, and with the cost of transporting said goods from Birmingham to the customer. All sales included within this classification were of goods which were shipped by the factory located outside of the State of Alabama, with freight charges prepaid or allowed to the customer located within this state.

The complainant was not a manufacturer.

The pertinent provision of the Act of 1937 under which the sales tax officials undertake to justify the assessment and levy is found in Section 2 of said Act and reads (General Acts Alabama, Special Session 1936-37, pp. 125, 126): "There is hereby levied, in addition to all other taxes of every kind now imposed by law, and shall be collected as herein provided, privilege or license tax against the person on account of the business activities and in the amount to be determined by the application of rates against gross sales, or gross receipts, as the case may be, as follows: (a) Upon every person, firm or corporation engaged or continuing within this State in business of selling at retail any tangible personal property whatsoever, including merchandise and commodities of every kind and character, (not including, however, bonds or other evidences of debt or stocks) an amount equal to two per cent of the gross proceeds of sales of the business, except where a different amount is expressly provided herein. * * *

Section 2 (f) of said Act provides, inter alia: "There shall be excepted from the gross receipts of sale so as not to be taxed so much thereof as is derived from business conducted in commerce between this State and other States of the United States, or between this State and foreign countries, which the State of Alabama is prohibited from taxing under the Constitution of the United States * * *."

While this Act makes the local retail dealer the taxpayer, and requires him to keep records and make reports and to pay the tax at stated periods, nevertheless he is required under penalty to collect the tax from the consumer. "The consumer is the final burden bearer. In that sense the tax is a consumer's tax. Doby v. State Tax Commission, 234 Ala. 150, 174 So. 233; Lone Star Cement Corp. v. State Tax Commission, 234 Ala. 465, 175 So. 399, 402." National Linen Service Corporation v. State Tax Commission, Ala.Sup., 186 So. 478.

We are not unmindful of the holding of the Supreme Court of the United States that, under the commerce clause of the Federal Constitution, U.S.C.A.Const. art. 1, § 8, cl. 3, in the absence of Congressional Action, state taxation, whatever its form, is precluded if it discriminates against interstate commerce or undertakes to lay a privilege tax measured by gross receipts derived from activities in such commerce which extend beyond the territorial limits of the taxing state; and that such a tax, at least when not apportioned to the activities carried on within the state, "burdens the commerce in the same manner and in the same extent as if the exaction were for the privilege of engaging in interstate commerce and would, if sustained expose it to multiple tax burdens, each measured by the entire amount of the commerce, to which local commerce is not subject." Gwin, White & Prince, Inc., v. Henneford, 305 U.S. 434, 59 S.Ct. 325, 327, 83 L.Ed. 272; Cudahy Packing Co. v. Minnesota, 246 U. S. 450, 38 S.Ct. 373, 62 L.Ed. 827; United States Express Co. v. Minnesota, 223 U.S. 335, 32 S.Ct. 211, 56 L.Ed. 459.

Likewise it has been held by the same court that "Even interstate business must pay its way"; that "It was not the purpose of the commerce clause to relieve those engaged in interstate commerce from their just share of state tax burden even though its increases the cost of doing the business." Western Live Stock v. Bureau of Revenue, 303 U.S. 250, 58 S.Ct. 546, 548, 82 L.Ed. 823, 115 A.L.R. 944.

Mr. Justice Stone in the case Western Live Stock v. Bureau of Revenue, supra, in the course of his opinion points out that while local taxes in one way or another may add to the expense of carrying on interstate commerce, and in that sense may burden it, but such local taxes are not for that reason prohibited. That "The vice characteristic of those [laws] which have been held invalid is that they have placed on the commerce burdens of such a nature as to be capable in point of substance, of being imposed * * * with equal right by every state which the commerce touches, merely because interstate commerce is being done, so that without the protection of the commerce clause it would bear cumulative burdens not imposed on local commerce."

As to the sales included in Classes "B", "C" and "D", the evidence shows that the complainant was in fact and truth the seller; that its place of business was in Birmingham, Alabama; that it was at this place the complainant accepted the purchasers' orders for the goods; that the purchasers and ultimate consumers were residents of Alabama; that the goods contracted to be bought of the complainant were to be delivered to them in Alabama; and that the goods were paid for by the consumers to the complainant in Alabama. The sales were Alabama sales. The means by which, and the place from which, the complainant obtained the goods to fulfill its contract were but incidents in the transaction, and cannot serve to change the status of the transactions. The consumers had no dealings with the nonresident manufacturers. Their contracts were with the complainant in Alabama for the sale and delivery of the goods to them in Alabama. Their contracts with the complainant were valid, enforceable contracts. Baker v. Lehman, Weil & Co., 186 Ala. 493, 65 So. 321. The tax assessed against the complainant as for sales included in Classes "B", "C" and "D" were properly made. The complainant is liable for said taxes. National Linen Service Corporation v. State Tax Commission, supra.

Under the agreed facts relating to the sales described in Class "A", is the complainant liable for the payment of the tax of two per cent assessed by the state taxing authorities? These sales amount in the aggregate to $32,689.11, and the tax thereon

is $653.78, if such sales were in fact taxable under the Alabama Sales Tax Law.

These goods were ordered by the customers in Alabama, from the complainant in Alabama, for consumption here. In the orders the cost price of the goods which the customers were to pay was stated and fixed, and agreed on, in each order. These orders were accepted by the complainant in Alabama, and carried with them the agreement that the goods were to be delivered to the purchasers in Alabama. It was no benefit to the purchasers that the goods were to be shipped "in interstate movement" for the reason that the price of the goods would be the same, whether shipped "in interstate movement" or not. Evidently this provision as to "interstate movement" was to preclude, if possible, the imposition of a sales tax on the goods in Alabama. The transactions were Alabama sales within the provision of the Alabama Sales Tax Law. The form or language of the customers' orders cannot affect the case.

It is not "within the power of the parties by the form of their contract to convert what was exclusively a local business, subject to state control, into an interstate commerce business, protected by the commerce clause." Superior Oil Co. v. State of Mississippi ex rel. Rush H. Knox, Attorney General, 280 U.S. 390–396, 50 S. Ct. 169, 170, 74 L.Ed. 504; Browning v. Waycross, 233 U.S. 16, 23, 34 S.Ct. 578, 58 L.Ed. 828-832.

The facts of the case must determine whether it falls within the protection of the commerce clause of the Federal Constitution, and not the words of the contract. The desire to make its act an act in commerce among the states is unimportant, when the facts show it to be otherwise. Superior Oil Co. v. State of Mississippi ex rel. Rush H. Knox, Attorney General, supra.

We are of the opinion that the complainant was properly assessed with the sales tax on the sales described in Class "A" of the bill of complaint. Banker Bros. Co. v. Pennsylvania, 222 U.S. 210, 32 S.Ct. 38, 56 L.Ed. 168.

The case of Long et al. v. Sherrill Terminal Co. et al., Ala.Sup., 187 So. 412,[1] is not in point and cannot influence the decision in this case.

It follows that the judgment of the Circuit Court of Montgomery County is due to be affirmed. It is so ordered.

Affirmed.

ANDERSON, C. J., and THOMAS and BROWN, JJ., concur.

