In the Matter of the Application of UNITED AUTOGRAPHIC REGISTER COMPANY, Petitioner, for an Order against JOSEPH D. McGOLDRICK, Comptroller of the City of New York, Respondent.

First Department, June 28, 1940.

*Newton K. Fox*, for the petitioner.

*Edmund B. Hennefeld* of counsel [*Arthur A. Segall* and *Sol Charles Levine* with him on the brief; *William C. Chanler, Corporation Counsel*], for the respondent.

Dore, J. This is a proceeding under article 78 of the Civil Practice Act to review a determination of the comptroller of the city of New York assessing sales taxes in the sum of $13,041.30 for the taxable period from December 10, 1934, to March 31, 1936, on petitioner's sales of printed business forms and registers. The assessment was made under Local Law No. 24 of the Local Laws of 1934 (published as No. 25) of the city of New York, since annually renewed. Petitioner, an Illinois corporation, is in the business of printing and selling certain business forms, records and stationery and also sells a patented machine known as a register which utilizes some of the printed forms as a filler. Petitioner's principal office is in Chicago and it has never qualified to do business in New York. It has plants or factories in Chicago, Ill., Cleveland, Ohio, and Oakland, Cal., but no factory in New York and no warehouse for storage of its products. It does not manufacture the registers but purchases them from a tool company in Chicago. The business of petitioner is handled in two divisions: (1) the register division handles the sales of registers and the paper filler stationery used therein and carbon rolls — using a blue order form therefor; (2) the continuous form division handles all other products, including leases of certain devices and attachments for typewriters and machines which are used in connection with the printed forms — using a yellow order form therefor.

During the taxable period, petitioner carried on a very large business of selling to New York city purchasers, maintaining a staff of sixteen or seventeen solicitors in New York city who operated from an office at No. 9 Park place, New York city. Orders are taken by petitioner's solicitors at the customer's place of business in New York city. The order is filled out by the solicitor, signed by the customer at his place of business in New York city, handed there to the solicitor who himself signs it, takes it to his New York city office, whence it is forwarded to the home office in Chicago, Ill., there checked and when approved is acknowledged by mail to the customer from Chicago. The finished forms are shipped to the customer in New York city by freight, express or parcel post. The goods are shipped F. O. B. factory Chicago or Cleveland and transportation costs are charged to the customer. A serial number is given to the particular register appropriated to the particular order in Chicago and registers and other merchandise are shipped F. O. B. factory Chicago, Ill.

The comptroller determined that all sales by petitioner to New York city purchasers, upon delivery of the merchandise to such purchasers within New York city, became subject to the city sales tax. Petitioner paid the sales tax assessed at $13,041.30, under protest and duress on October 28, 1937, and applied for a refund which was denied.

The petitioner originally claimed immunity from tax for its sales under the commerce clause of the Federal Constitution as well as under the State Enabling Act (Laws of 1934, chap. 873). Disposition of this appeal was withheld pending determination of the United States Supreme Court on the applicability of the Federal commerce clause to like transactions in cases pending before the Supreme Court of the United States when this appeal was argued. (*McGoldrick* v. *Berwind-White Co.*, 309 U. S. 33; *McGoldrick* v. *DuGrenier, Inc.*, Id. 70; *McGoldrick* v. *Felt & Tarrant Co.*, Id. 70.)

In January, 1940, the United States Supreme Court, in the cases above cited, sustained the city's contention with regard to the validity of the tax under the commerce clause. The majority opinion in the *Berwind-White* case held that the burden of the sales tax in form and substance is " laid upon the buyer for consumption " and " upon every purchaser, within the State, of goods for consumption, regardless of whether they have been transported in interstate commerce " (309 U. S. at pp. 43, 49); and that accordingly the tax may properly be imposed with respect to goods sold and transported in interstate commerce without violating the commerce clause. The court said: " Here the tax is conditioned upon

a local activity, delivery of goods within the State upon their purchase for consumption. It is an activity which apart from its effect on the commerce, is subject to the State taxing power. The effect of the tax, even though measured by the sales price, as has been shown, neither discriminates against nor obstructs interstate commerce more than numerous other State taxes which have repeatedly been sustained as involving no prohibited regulation of interstate commerce." The court pointed out that in two instances the transactions in the *Berwind-White* case called for delivery at points outside the city of New York, in one case F. O. B. at the mines in Pennsylvania, and in the other at the pier in Jersey City, N. J., and remanded the cause for further proceedings with regard to the State question involved, namely, whether the taxing act applied to these transactions, since the enabling statute expressly prohibited the city from imposing a tax on any transaction " originating and/or consummated outside of the territorial limits of any such city." Similarly the *DuGrenier* case was remanded for further proceedings. In the *Berwind-White* case the two disputed transactions were eliminated by stipulation and the motion for reargument was withdrawn. In the companion case, *DuGrenier, Inc.*, v. *McGoldrick (supra)*, the Court of Appeals on June 14, 1940, held that its decision in that case (281 N. Y. 608) had been made solely on the ground that the Legislature could not empower the city to tax the proceeds of transactions in interstate commerce; that the issue whether such transactions are within the scope of the Enabling Act was not considered; that such question was no longer open on the record, since the remittitur on which the case was certified to the United States Supreme Court recited that the Court of Appeals affirmed " upon the sole ground that the City Sales Tax Law as here applied violates the Commerce Clause (Art. 1, sec. 8, cl. 3) of the Constitution of the United States;" and accordingly denied reargument (*DuGrenier, Inc.*, v. *McGoldrick*, 283 N. Y. 685).

Permission was given to both sides in the case at bar to file supplemental briefs after final disposition by the Court of Appeals of the issues remanded by the United States Supreme Court in the cases above referred to.

Petitioner now relies on the contention that the State Enabling Act bars application of the New York city sales tax to the transactions involved in this proceeding, claiming that under the facts in this case title and possession passed outside the city of New York, and, therefore, the sales in question are not local and not taxable. Petitioner especially relies on the following provision of the enabling act: " This act shall not authorize the imposition of a tax on any transaction originating and/or consummated

outside of the territorial limits of any such city, notwithstanding that some act be necessarily performed with respect to such transaction within such limits."

The ultimate burden of the sales tax in question both in form and in substance is a tax (measured by the sales price) upon the New York city purchaser of the petitioner's commodities and not on the vendor, petitioner herein. We think the imposition of the tax in the case at bar is fully consistent with the broad legislative purposes of the Enabling Act which authorized the city to impose " any tax " the Legislature had the power to impose, intending, however, by its territorial limitation that the burden of emergency relief for New York city residents should be borne by New York city purchasers and not by purchasers in other jurisdictions. The taxpayer in this case is not the petitioner, an Illinois corporation, but the New York city purchaser. The merchandise in question was purchased through petitioner's solicitors in New York city and the New York city purchaser received the merchandise by delivery within the city of New York for consumption and use. That there is at the warehouse outside of the city an alleged formal acceptance of the orders secured and signed by purchasers within the city, and that the orders are " F. O. B. factory," Chicago or Cleveland, should not be controlling. At the hearing the taxpayer's own witness testified that the F. O. B. provision was to " stop any claim for freight," so that the shipments in transit would be at the purchaser's risk. The acknowledgments sent from Chicago are mere confirmations of the terms of the orders secured in New York and for tax purposes add nothing essential to what has transpired in New York. In one form of petitioner's contracts is a provision that the order cannot be countermanded by the customer. The required approval is really automatic as the instances of rejection of any order are very few, indeed no specific instance was adduced on the hearing. The procedure of approval and acknowledgment is really collateral and incidental.

The delivery from the particular source selected by the petitioner outside the State is solely a matter of convenience or economy in the petitioner's method of conducting business. There is nothing about petitioner's products which could not be duplicated in their entirety either by a printer or tool company in the city of New York. Obviously the forms in which petitioner chiefly deals could all be printed here. Petitioner's chief witness testified that the purchaser — the real taxpayer — was wholly indifferent where the merchandise came from as long as he got it on time and in good condition.

In *Matter of National Cash Register Co.* v. *Taylor* (276 N. Y. 208) the Court of Appeals expressly refused to determine the scope of the power delivered by the Legislature to the city under the Enabling Act, saying: "We hold only that the Legislature could not by any statute confer upon the city a power to tax proceeds of such transactions in interstate commerce." (276 N. Y. at p. 214.) In a later case, however, *Matter of Jagels* v. *Taylor* (280 N. Y. 766; reargument denied, 281 id. 664, 677; affd., 309 U. S. 619, January 29, 1940; petition for rehearing denied, Id. 695, February 26, 1940), the mere acceptance of a sales contract without the State did not bar the operation of the City Sales Tax Law.

It is true that where shipment and delivery are made to a purchaser outside of the city of New York the city's sales tax has no application (*Matter of Gunther's Sons* v. *McGoldrick,* 279 N. Y. 148 [1938]); but in this case the purchase was completed and consummated by final shipment and delivery of the merchandise within the city to a city purchaser who had ordered it in the city for use or consumption.

In *Matter of Sears, Roebuck & Co.* v. *McGoldrick* (279 N. Y. 184 [1938]; reargument denied, 280 id. 570), where the merchandise was kept in stock but was ordered from outside the State of New York, the Court of Appeals unanimously upheld the tax as to all transactions including those in which the purchaser had paid the freight, and held:

"When the purchaser entered one of the defendant's stores and made a contract to buy certain merchandise, according to the sample displayed, his purpose and object were to procure the article, irrespective of the place from which it was delivered. * * * The delivery from the warehouses of the appellant outside the State was a matter of convenience or economy in the methods of conducting the appellant's business. It cannot be said that the shipments out of the State were one of the important features of the contract. It was incidental to the contract, the obligation of the defendant being to deliver the article purchased.

"* * * Under such circumstances, to permit Sears, Roebuck & Co. to evade this tax would really be a discrimination against people doing business within the city of New York with storehouses or mills there. Besides, if such sales were to go untaxed, a door would be open for an evasion, unfair indeed to those who did not care to resort to such methods."

During the taxable period involved, this petitioner's gross sales in New York city amounted to over one-half million dollars. The validity of the tax on such sales under the commerce clause is no longer open to question. Under the facts disclosed, it cannot

have been the legislative intent to confer upon this petitioner a discriminatory advantage by permitting its sales to New York city consumers to be made free from a sales tax the incidence of which ultimately falls upon the purchaser here. In the case at bar as to every essential transaction in the record, the ultimate taxpayer is a New York city purchaser who bought the goods from a New York city salesman and received them for use in New York city, and the tax should be upheld.

The determination of the comptroller should be confirmed, with fifty dollars costs and disbursements.

MARTIN, P. J., and GLENNON, J., concur; UNTERMYER and CALLAHAN, JJ., dissent on the ground that the transactions involved herein originated and were consummated outside the city of New York. The contracts did not become effective until accepted outside the city of New York, and transfer of title and possession took place outside said city.

Determination confirmed, with fifty dollars costs and disbursements.