COMMISSIONER OF CORPORATIONS AND TAXATION *vs.* FORD MOTOR COMPANY.

Suffolk. November 16, 1939. — April 4, 1941.

Present: FIELD, C.J., DONAHUE, LUMMUS, DOLAN, & RONAN, JJ.

*Interstate Commerce. Tax*, Excise on corporation. *Corporation*, Taxation, Foreign. *Good Will. Appellate Tax Board.*

A foreign corporation, engaged in assembling automobiles at a branch in this Commonwealth and delivering the completed automobiles to dealers, was not subject to an excise, under either § 39 or § 39C of G. L. (Ter. Ed.) c. 63, computed upon the amount of sales by the branch to out-of-State dealers, or of sales, called "drive-aways" with deliveries to out-of-State dealers at the branch for out-of-State transportation; or of sales made by an out-of-State branch to out-of-State dealers on orders filled by the branch here; or of sales made by the branch here to out-of-State dealers on orders filled by out-of-State branches, since all of such sales were in interstate commerce.

Sales made by an out-of-State branch of a foreign corporation to such branch's dealers located in Massachusetts and attributable to the activities of that branch within G. L. (Ter. Ed.) c. 63, § 38, cl. 6, should be excluded in assessing an excise under § 39C, although the orders were filled by a Massachusetts branch of the corporation.

Computation of an excise under § 39C of G. L. (Ter. Ed.) c. 63 upon sales made by a foreign corporation to purchasers in this Commonwealth who had placed their orders with a branch of the corporation here was proper although the orders were filled by deliveries from branches located in other States, such sales being intrastate commerce.

The mere fact that a foreign corporation, in making in good faith a return to the commissioner of corporations and taxation, set forth the several items of "gross receipts assignable to" this Commonwealth, did not estop it, upon an appeal from an assessment based on such gross receipts, from showing that several of the items were interstate sales which should not be considered in computing the excise.

A finding by the Appellate Tax Board upon an appeal from an assessment of an excise upon a corporation, that the corporation had no good will value, was a finding of fact and was final in the absence of a report of the evidence heard by the board.

APPEAL from a decision by the Appellate Tax Board.

*J. Burke Sullivan*, Assistant Attorney General, for the Commissioner of Corporations and Taxation.

*A. J. Santry*, (*R. Bancroft* with him,) for the taxpayer.

RONAN, J. This is an appeal by the commissioner of corporations and taxation from a decision of the Appellate Tax Board granting a partial abatement of a corporate excise tax, which had been assessed and paid by the taxpayer, a foreign corporation having a place of business in Somerville, in this Commonwealth.

The facts have been found by the Appellate Tax Board. The Ford Motor Company, a foreign corporation with its principal place of business in the State of Michigan, conducts a plant at Somerville, in this Commonwealth, where automobiles are assembled and completed from parts shipped from points outside this Commonwealth, principally from the company's main plant in Michigan, and are then sold to Ford dealers. Substantially all the income of the Somerville branch is derived from sales of automobiles and parts to these dealers, who are located in the territory assigned by the company to this branch, which comprises the greater part of this Commonwealth, a part of Connecticut, and all of Maine, New Hampshire and Rhode Island. The company also owns and maintains another plant in Troy, New York, known as the Green Island branch, where springs, radiators and bolts are manufactured, and where automobiles are supplied to dealers in the western part of this Commonwealth and in districts in other States. The Somerville branch has frequently received and filled orders from the Green Island branch, and other Ford branches located outside the Commonwealth, for delivery of automobiles to dealers located within the territory served by this branch or to dealers located in the districts of other branches, some of these districts being within and others being without the Commonwealth. The orders from the Green Island branch that were filled by the Somerville branch were negotiated through the Green Island branch and were attributable to the activities of that branch.

Ford dealers in the territory served by the Somerville branch submit a monthly estimate of the automobiles they will need during the coming months, specifying the types or models desired. These estimates are filled if there are automobiles available, and, if full compliance with the

estimate cannot be made, the dealer is supplied with such automobiles as are in stock that are nearest to the types or models he requires. The dealer, however, is not required to accept automobiles that do not correspond with those described in the estimate given by him to the company.

The sales by the Somerville branch were for cash, or upon open account to dealers who had credit for money paid in advance, or by a down payment collected upon delivery together with a note for the balance. This note was then discounted by the company with a finance company with whom the dealer had arranged to take up the note. The Somerville branch in every instance received payment before it parted with title to its goods.

The general practice of the Somerville branch was to make deliveries to the dealers' places of business by an independent company, called a convoy company, whom it selected and paid. Some automobiles were shipped by freight with a bill of lading attached to a sight draft, and some were shipped by express "C. O. D." In some instances, dealers called for and accepted delivery at the branch and drove away with the automobiles. Such deliveries as were made to out-of-State dealers for transportation out of the Commonwealth were referred to by the board as "drive-aways." Automobile parts were sold by this branch for cash or upon open account.

The commissioner in September, 1936, assessed a corporate excise tax upon the company, amounting to $32,372.10. This tax purported to be imposed in accordance with G. L. (Ter. Ed.) c. 63, § 39, and St. 1936, c. 397. Thereafter, he granted an abatement of $14,239.97, leaving a net tax in the principal sum of $18,132.13, which the company paid with interest on February 18, 1937. The amount of the abatement was determined by the commissioner by computing the tax under G. L. (Ter. Ed.) c. 63, § 39C, and basing it upon a percentage of the gross receipts from business which he considered assignable to this Commonwealth, using the sum of $32,967,492.26 which the company set forth in its return as "gross receipts assignable to Mass" and in addition three small items amounting in all to

$5,291.35 for rent received from real estate, miscellaneous earnings, and sales of capital asset equipment items. The schedule of all sales of both automobiles and parts of the Somerville branch in 1935 was as follows:

"(1) Sales to Massachusetts dealers of the Somerville
        branch filled by the Somerville branch   .   .   $19,202,608.31

(2) Sales to out-of-state dealers of
        the Somerville branch filled
        by the Somerville branch
            Deliveries .   .   .   .   $10,452,795.49
            'Drive-aways'   .   .   .      880,571.39
                                     ─────────────────   11,333,366.88

(3) Sales to Massachusetts dealers of the Green
        Island branch filled by the Somerville branch      360,867.87

(4) Sales to out-of-state dealers of the Green Island
        branch filled by the Somerville branch   .   .   1,735,955.51

(5) Sales to Massachusetts dealers of the Somerville
        branch and of the Green Island branch filled
        by branches outside of Massachusetts   .   .      196,221.39

(6) Sales to out-of-state dealers of the Somerville
        branch and the Green Island branch filled by
        branches outside of Massachusetts   .   .   .      133,180.95
                                                        ─────────────
        Total .   .   .   .   .   .   .   .   .   $32,962,200.91"

The board found that the items 2, 3, 4, 5, 6 in the foregoing schedule were sales in interstate commerce, and ruled that no tax should be assessed upon the gross receipts from these sales. It found that the gross receipts from sales as set forth in item 1, plus the said sum of $5,291.35, were the only gross receipts upon which a tax, if computed under G. L. (Ter. Ed.) c. 63, § 39C, could be based and that, if assessed under this section, the tax would amount to $10,564.35.

A tax computed under G. L. (Ter. Ed.) c. 63, § 39, upon the corporate excess employed within the Commonwealth and a percentage of the net income with the additional tax provided for by St. 1936, c. 397, was found by the board to amount to $11,987.97. The board ruled that the tax should not be reduced below the amount that would be due if it was computed upon the basis of corporate excess and the net income in accordance with G. L. (Ter. Ed.) c. 63, § 39, and that the amount last mentioned was the

amount for which the tax should have been assessed. It found that the company was entitled to an abatement of $6,114.16 together with interest on the amount abated.

A foreign corporation carrying on or doing business within the Commonwealth is required by G. L. (Ter. Ed.) c. 63, § 39, to pay an excise tax which may be computed under this section by any one of three methods, i.e., (a) $5 per $1,000 upon the value of the corporate excess employed by it within the Commonwealth plus two and one half per cent of its net income allocable to this Commonwealth; (b) $5 per $1,000 upon the value of its tangible property situated in this Commonwealth and not locally taxable, plus two and one half per cent of its net income allocable · to this Commonwealth; or (c) one twentieth of one per cent of such proportion of the fair value of its capital stock as the value of the assets employed in this Commonwealth bears to its total assets employed in its business. A fourth method for the computation of the tax is furnished by G. L. (Ter. Ed.) c. 63, § 39C, which provides that "Every foreign corporation deriving its profits principally from the ownership, sale, rental or use of real estate or tangible personal property shall pay annually, with respect to the carrying on or doing of business by it, a total excise under this chapter not less in amount than one twentieth of one per cent of said corporation's gross receipts from business assignable to this commonwealth as defined in clause six of section thirty-eight." The clause last referred to in so far as it pertains to gross receipts assignable to this Commonwealth provides that "gross receipts from business assignable to this commonwealth shall be the amount of its gross receipts for the taxable year from (*a*) sales, except those negotiated or effected in behalf of the corporation by agents or agencies chiefly situated at, connected with or sent out from premises for the transaction of business owned or rented by the corporation outside the commonwealth and sales otherwise determined by the commissioner to be attributable to the business conducted on such premises." G. L. (Ter. Ed.) c. 63, § 38, cl. 6.

The company derived its profits principally from the

sale of motor vehicles and parts for such vehicles, and so comes within the description of such foreign corporations upon which an excise may be imposed upon the basis designated in G. L. (Ter. Ed.) c. 63, § 39C. *Essex Theatres Co.* v. *Commonwealth*, 265 Mass. 210.

The taxpayer concedes that the tax may be computed by any one of the four methods that have just been enumerated, and that the Commonwealth is entitled to have the tax assessed and levied upon any one of these four bases which will produce the highest tax. It raises no question as to the propriety of a tax laid in accordance with G. L. (Ter. Ed.) c. 63, § 39C, provided that gross receipts from interstate commerce are not included in the gross receipts assignable to this Commonwealth. The parties agree that the company is doing a local business and that it is subject to an excise tax. It is the amount of this tax that is in dispute. *National Leather Co.* v. *Commonwealth*, 256 Mass. 419; affirmed, 277 U. S. 413. *Atlantic Lumber Co.* v. *Commissioner of Corporations & Taxation*, 292 Mass. 51; affirmed, 298 U. S. 553.

The commissioner in substance makes two contentions, first, that all the items in the schedule of sales should have been included in the computation of the tax under G. L. (Ter. Ed.) c. 63, § 39C, even if some of these receipts were derived from interstate commerce; and, secondly, that if there was no error in excluding gross receipts from interstate sales then the tax should be computed in accordance with G. L. (Ter. Ed.) c. 63, § 39, as the board purported to do but that it erroneously omitted the value of the good will of the company in determining the value of its corporate excess employed in this Commonwealth.

The nature of the tax which may be imposed upon foreign corporations under G. L. (Ter. Ed.) c. 63, §§ 39, 39C, has been settled by numerous decisions. It has been held that the tax is not a property tax nor an income tax. Neither is it a franchise tax on the right to exist as a corporation. The tax is measured by the property and income fairly allocable to the business conducted in this Commonwealth. "It is an excise for the commodity or privilege of having a

place of business in Massachusetts with the protection of our laws and the financial, commercial and other advantages appertaining thereto." *Judson Freight Forwarding Co.* v. *Commonwealth*, 242 Mass. 47, 51. *Carlos Ruggles Lumber Co.* v. *Commonwealth*, 261 Mass. 450, 452–453. *Atlantic Lumber Co.* v. *Commissioner of Corporations & Taxation*, 292 Mass. 51. *Cheney Brothers Co.* v. *Massachusetts*, 246 U. S. 147, 157–158. *Alpha Portland Cement Co.* v. *Massachusetts*, 268 U. S. 203, 216. The privilege which the Commonwealth gives to a foreign corporation and for which it may seek payment in the form of a tax is the benefit which a commercial enterprise derives from a State government in conducting a local, as distinguished from an interstate, business. But a State cannot tax a foreign corporation for the privilege of engaging in interstate commerce and, consequently, it cannot exact an excise from a foreign corporation that conducts only an interstate business within the State, for that would be "essentially a tax on doing interstate business and therefore repugnant to the commerce clause." *Cheney Brothers Co.* v. *Massachusetts*, 246 U. S. 147, 154. *Heyman* v. *Hays*, 236 U. S. 178. *Ozark Pipe Line Corp.* v. *Monier*, 266 U. S. 555. *Alpha Portland Cement Co.* v. *Massachusetts*, 268 U. S. 203. *Bingaman* v. *Golden Eagle Western Lines, Inc.* 297 U. S. 626. *Best & Co. Inc.* v. *Maxwell*, 311 U. S. 454.

The Somerville branch was engaged in conducting a local business, and in the sales of motor vehicles and parts to dealers whose places of business were located beyond the boundaries of the Commonwealth. Our present inquiry is whether the board erred in computing the excise under G. L. (Ter. Ed.) c. 63, § 39C, by refusing to include the gross receipts set forth in items two to six inclusive in its schedule of sales.

Item two consists of receipts from two classes of sales, first, sales to out-of-State dealers and, second, sales which have been termed "drive-aways," where the vehicles were taken by dealers at the Somerville branch for transportation out of the Commonwealth.

Delivery of vehicles included in the first class was usually

made by a convoy company hired and paid by the company. Some vehicles were shipped by freight but the bill of lading, which was issued by the carrier, could not be obtained by the dealer until he had paid the sight draft which accompanied the bill of lading. Other vehicles were sent to these dealers by express "C. O. D." These modes of shipment would tend to indicate an intent upon the part of the Somerville branch to retain title until the vehicles transported by the convoy had been delivered and those carried by freight or express had been paid for by the dealer. Such sales would be completed in the States into which the vehicles had been sent. This feature of the transactions serves to emphasize what, without it, is sufficiently clear, that these shipments of the automobiles from Somerville to purchasers in other States were transactions in interstate commerce. *International Textbook Co.* v. *Pigg*, 217 U. S. 91. *Sioux Remedy Co.* v. *Cope*, 235 U. S. 197. *Kirmeyer* v. *Kansas*, 236 U. S. 568. *Pennsylvania Railroad* v. *Clark Brothers Coal Mining Co.* 238 U. S. 456. *Hump Hairpin Manuf. Co.* v. *Emmerson*, 258 U. S. 290. *Western Cartridge Co.* v. *Emmerson*, 281 U. S. 511.

The sales in the second class of item two comprise the "drive-aways" so called. The motor vehicles were delivered at Somerville to out-of-State dealers apparently for resale to their customers, who presumably were also non-residents. The buying of goods for the purpose of shipping them to purchasers in another State if followed by such shipments is interstate commerce. *Dahnke-Walker Milling Co.* v. *Bondurant*, 257 U. S. 282. *Shafer* v. *Farmers Grain Co. of Embden*, 268 U. S. 189. *United States* v. *Rock Royal Co-operative, Inc.* 307 U. S. 533, 568, 569. *Northwestern Improvement Co.* v. *Ickes*, 111 Fed. (2d) 221, 223.

The vehicles were delivered to dealers who had entered into contracts with the Somerville branch for the sale of its automobiles. These dealers were under the supervision of the Somerville branch in the distribution and sale of the company's products. Both this branch and the dealers contemplated the transportation of these automobiles in the usual course of business by the dealers to their respec-

566 COMMISSIONER OF CORP. & TAX. *v.* FORD MOTOR CO. [308

tive districts, all of which were beyond the boundaries of this Commonwealth. The dealers having accepted delivery were, as a practical matter, required to transport the cars across the State line, like the buyers in *In re Globe Varnish Co.* 114 Fed. (2d) 916, and in *Wood Preserving Corp.* v. *Department of Treasury of Indiana*, 114 Fed. (2d) 922, and the enameler in *Ingram-Richardson Manuf. Co. of Indiana, Inc.* v. *Department of Treasury of Indiana*, 114 Fed. (2d) 889. The delivery was the initial step in a transaction which resulted in the sale of the goods to the ultimate customer in another State. We think the transaction constituted interstate commerce. *A. G. Spalding & Bros.* v. *Edwards*, 262 U. S. 66. *Flanagan* v. *Federal Coal Co.* 267 U. S. 222, 225. *Foster-Fountain Packing Co.* v. *Haydel*, 278 U. S. 1, 12, 13. *Public Utilities Commission of Rhode Island* v. *Attleboro Steam & Electric Co.* 273 U. S. 83. *Superior Oil Co.* v. *Mississippi*, 280 U. S. 390. *Currin* v. *Wallace*, 306 U. S. 1, 10.

The third item comprises sales to dealers within the Commonwealth, who were customers of the Green Island branch and whose orders were filled by the Somerville branch. We need not consider whether these sales were intrastate business within the principles enumerated in *Graybar Electric Co. Inc.* v. *Curry*, 238 Ala. 116; affirmed, 308 U. S. 513, since the board has found that these sales were negotiated through the Green Island branch, and were attributable to the activities of that branch. The gross receipts upon which the excise under G. L. (Ter. Ed.) c. 63, § 39C, is assessed do not include such receipts from sales which were "negotiated or effected in behalf of the corporation by agents or agencies chiefly situated at, connected with or sent out from premises for the transaction of business owned or rented by the corporation outside the commonwealth." G. L. (Ter. Ed.) c. 63, § 38, cl. 6.

Sales on requisition of the Green Island branch and filled by the Somerville branch to dealers out of the Commonwealth were the source of the gross receipts described in the fourth item. The arrangement, in each instance, resulted in a single sale, which was made by the Somerville

branch and completed when delivery was made to the out-of-State dealer, in one of the ways mentioned above in discussing sales made under item two. The purchase of vehicles by a dealer doing business in one State from a manufacturer located in another State, followed by the shipment of goods to the dealer by a branch of the manufacturer located in a third State, constitutes interstate commerce. *Carlos Ruggles Lumber Co.* v. *Commonwealth*, 261 Mass. 450, 455. *Cheney Brothers Co.* v. *Massachusetts*, 246 U. S. 147, 153. *Federal Trade Commission* v. *Pacific States Paper Trade Association*, 273 U. S. 52. *Furst* v. *Brewster*, 282 U. S. 493.

The board found that the fifth item of the schedule of sales "embraced sales to dealers located in Massachusetts within the territory of the Somerville branch, but filled by branches outside the State" and that these were "interstate sales." Read with the other findings of the board concerning the character of the other groups of sales comprised in the said schedule, we interpret the finding as to the sales included in this fifth item to be one that the goods were ordered at the Somerville branch of the company by its dealer-customers located within its territory in this Commonwealth and that the goods were delivered to them by branches of the seller located without the Commonwealth. We do not concur in the view of the board that these were "interstate sales," similar to those where sales are made by a company having an office here which is used as headquarters for salesmen who solicit orders in this Commonwealth and in other New England states. We are of opinion that these sales were intrastate sales made by the taxpayer at its Somerville branch (where it also assembles and sells automobiles and sells parts) to its customers located in this Commonwealth and within the territory of that branch and that the character of these sales was not affected by the fact that the company caused delivery of the automobiles to be made to such customers by its branches situated outside the Commonwealth. *Graybar Electric Co. Inc.* v. *Curry*, 238 Ala. 116; affirmed, 308 U. S. 513. The gross receipts from these sales were subject

to an excise but as the inclusion of a tax on this item would be insufficient to make the total tax which could properly be computed under § 39C greater than the tax computed under § 39, the error in omitting a tax on this item does not affect the amount of the tax which was finally determined by the board under the last mentioned section.

The receipts included in the sixth item were from sales from branches outside the Commonwealth to dealers who had their places of business outside the .Commonwealth. The income from sales of goods made outside the Commonwealth by a foreign corporation having a usual place of business within this Commonwealth, to customers not located within the Commonwealth, by direct shipment to such customers, from points beyond the Commonwealth, has been held to be properly excluded in computing an excise, under a statute which exempted income derived from interstate commerce. *H. P. Hood & Sons* v. *Commonwealth*, 235 Mass. 572. *Carlos Ruggles Lumber Co:* v. *Commonwealth*, 261 Mass. 450. See *Eaton, Crane & Pike Co.* v. *Commonwealth*, 237 Mass. 523.

The transactions included in the second, third, fourth and sixth items of the Somerville branch's schedule of its receipts were not taxable because they were, in one case, exempted by the statute and, in the remaining instances, were from sales in interstate commerce. The power to regulate such commerce is conferred upon Congress by art. 1, § 8, of the Federal Constitution. Even in the absence of congressional action, a State may not put a direct and immediate burden upon interstate commerce in the form of a tax, without apportionment, upon the gross proceeds derived from such commerce. *Philadelphia & Southern Steamship Co.* v. *Pennsylvania*, 122 U. S. 326. *Galveston, Harrisburg & San Antonio Railway* v. *Texas*, 210 U. S. 217. *Crew Levick Co.* v. *Pennsylvania*, 245 U. S. 292. *Fisher's Blend Station, Inc.* v. *State Tax Commission*, 297 U. S. 650. *Puget Sound Stevedoring Co.* v. *State Tax Commission*, 302 U. S. 90. *J. D. Adams Manuf. Co.* v. *Storen*, 304 U. S. 307. A tax upon the sales of goods shipped to another State would. subject interstate commerce to the

risk of multiple taxation to which intrastate commerce is not exposed. *Western Live Stock* v. *Bureau of Revenue,* 303 U. S. 250. *Gwin, White & Prince, Inc.* v.' *Henneford,* 305 U. S. 434.

The necessity of the Commonwealth to broaden its tax field in order to secure additional revenue to meet the increased cost of government must be recognized. The power to tax is an essential attribute of sovereignty and not one delegated to the Commonwealth. Foreign corporations engaged in interstate commerce are not immune from local tax burdens in respect to their property or their intrastate business or their privilege of doing a local business or their income attributable to their activities within the taxing State. *International Shoe Co.* v. *Shartel,* 279 U. S. 429. *United States Glue Co.* v. *Oak Creek,* 247 U. S. 321. *Underwood Typewriter Co.* v. *Chamberlain,* 254 U. S. 113. *Western Live Stock* v. *Bureau of Revenue,* 303 U. S. 250. *Coverdale* v. *Arkansas-Louisiana Pipe Line Co.* 303 U. S. 604. *Southern Pacific Co.* v. *Gallagher,* 306 U. S. 167. *Wisconsin* v. *J. C. Penney Co.* 311 U. S. 435. *Graybar Electric Co. Inc.* v. *Curry,* 238 Ala. 116; affirmed, 308 U. S. 513. But the power of the State to tax foreign corporations must not infringe upon the commerce clause of the Constitution of the United States. Even in the absence of action by Congress, a State may not exact an excise not apportioned to intrastate activities but measured by a percentage of the entire gross receipts derived from commercial activities extending beyond the boundaries of the taxing State. The exercise of such a power by the States would lead to discrimination against interstate commerce, and would result in the erection of barriers against such commerce and accomplish the very object that was intended to be prevented by the commerce clause of the Federal Constitution. *Baldwin* v. *G. A. F. Seelig, Inc.* 294 U. S. 511. *South Carolina State Highway Department* v. *Barnwell Brothers, Inc.* 303 U. S. 177. *Gwin, White & Prince, Inc.* v. *Henneford,* 305 U. S. 434.

The general purpose of the commerce clause, art. 1, § 8, giving Congress power "to regulate commerce with foreign

nations, and among the several states," was to protect such commerce from discrimination or regulation by the States or from action which would impose a direct and immediate burden upon such commerce, whether such action was in the form of a tax or otherwise. *New Jersey Bell Telephone Co.* v. *State Board of Taxes & Assessments of New Jersey,* 280 U. S. 338. *Minnesota* v. *Blasius,* 290 U. S. 1, 8. *Cooney* v. *Mountain States Telephone & Telegraph Co.* 294 U. S. 384. But the clause does not grant immunity to foreign corporations from taxation by the States which does not directly oppress such commerce. *Postal Telegraph-Cable Co.* v. *Richmond,* 249 U. S. 252, 259. *Western Live Stock* v. *Bureau of Revenue,* 303 U. S. 250, 254. *Ford Motor Co.* v. *Beauchamp,* 308 U. S. 331. *McGoldrick* v. *Berwind-White Coal Mining Co.* 309 U. S. 33, 45. *McCarroll* v. *Dixie Greyhound Lines, Inc.* 309 U. S. 176. *Wisconsin* v. *Minnesota Mining & Manuf. Co.* 311 U. S. 452.

The taxpayer filed a return from which it appeared that the gross receipts assignable to Massachusetts amounted to $32,967,492.26. The amount stated represented the total sales made by the Somerville branch. There is no contention that the company was not acting in good faith or that it intended to mislead the commissioner. Such a mistake does not preclude the taxpayer from showing the actual facts and from having its tax liability determined by correct principles of law applicable to these facts. *Dunnell Manuf. Co.* v. *Pawtucket,* 7 Gray, 277. *Charlestown* v. *County Commissioners of Middlesex,* 109 Mass. 270. *Milford Water Co.* v. *Hopkinton,* 192 Mass. 491. *Sears* v. *Nahant,* 221 Mass. 437. *Hamilton Manuf. Co.* v. *Lowell,* 274 Mass. 477.

The commissioner raises the further point that, even if the amount of the tax properly computed upon the gross receipts under G. L. (Ter. Ed.) c. 63, § 39C is less than a tax assessed upon the corporate excess and net income under G. L. (Ter. Ed.) c. 63, § 39, and the Commonwealth is entitled to a tax levied under the latter section, then the board was in error, because, in computing the corporate excess. it did not include the good will of the company.

The board found that the company was an extensive advertiser; that no item of good will appeared upon its balance sheet and that during the five years ending January 1, 1936, it had sustained losses in some years and made profits in others of certain amounts. There was testimony "that the company would have to receive some amount over its net worth value of $600,000,000, in round figures, before anything could be ascribed to good will," and that the company had no good will value. The commissioner during the hearing had submitted a computation of the tax upon the basis of corporate excess and net income, which included a valuation of the good will, and which was arrived at by analogy to the method used by another large automobile manufacturer in determining its good will value. The board rejected the commissioner's valuation remarking that it "is enough to say that we find no justification in the evidence for a good will value of the sort."

A corporation may have a valuable good will even though the business may have been conducted at a loss during certain years, *Barden Cream & Milk Co.* v. *Mooney*, 305 Mass. 545; *Rookwood Pottery Co.* v. *Commissioner of Internal Revenue*, 45 Fed. (2d) 43, 45; *Securities Realization Co.* v. *Peabody & Co.* 300 Ill. App. 156; *Appeal of C. F. Hovey Co.* 4 B. T. A. 175, 177, and the existence of good will is not negatived by an omission to carry it upon the books at a certain valuation. *Helvering* v. *Security Savings & Commercial Bank*, 72 Fed. (2d) 874, 876. It has been said in decisions pointing out the nature and the factors which must be considered in determining the value of good will that no specific rule can be laid down to ascertain its value but that each case must be decided in the light of its own particular facts. The question presents an issue of fact. *Moore* v. *Rawson*, 185 Mass. 264. *Griffith* v. *Kirley*, 189 Mass. 522. *Gordon* v. *Knott*, 199 Mass. 173. *Martin* v. *Jablonski*, 253 Mass. 451. *White Tower System, Inc.* v. *White Castle System of Eating Houses Corp.* 90 Fed. (2d) 67. *Schuh Trading Co.* v. *Commissioner of Internal Revenue*, 95 Fed. (2d) 404. *William E. Dee Co.* v. *Proviso Coal Co.* 290 Ill. 252. *Matter of Brown*, 242 N. Y. 1.

The particular complaint of the commissioner is not that the board did not consider the value of the good will but rather that it found that the good will had no value. There was no ruling that good will was not a factor in fixing the value of the corporate excess. Even if there had been, the commissioner would not be prejudiced where, as here, it was found that the item in question had no value. We do not know what evidence was before the board, although it appears that there was testimony that the company had no good will value. It is provided by G. L. (Ter. Ed.) c. 58A, § 13, as amended by St. 1933, c. 321, § 7, St. 1935, c. 218, § 1, St. 1939, c. 366, § 1, that "The decision of the board shall be final as to findings of fact." A finding based upon unreported evidence cannot be disturbed. *Commissioner of Corporations & Taxation* v. *J. G. McCrory Co.* 280 Mass. 273. *Springfield Young Men's Christian Association* v. *Assessors of Springfield,* 284 Mass. 1. *Revere* v. *Revere Construction Co.* 285 Mass. 243. *Assessors of Boston* v. *Garland School of Home Making,* 296 Mass. 378. *Choate* v. *Assessors of Boston,* 304 Mass. 298.

Abatement must be granted in the sum of $6,114.16, with interest at the rate of six per cent per annum from February 16, 1937, and with costs against the commissioner. G. L. (Ter. Ed.) c. 58A, § 13, as amended by St. 1939, c. 366, § 1.

*So ordered.*