## No. 35,713

MONTGOMERY WARD & COMPANY, INC., *Appellee*, v. STATE COMMISSION OF REVENUE AND TAXATION, *Appellant*.

(133 P. 2d 1008)

Opinion filed February 10, 1943.

*James D. Dye*, of Ottawa, *Mark L. Bennett*, of Topeka, and *Mason Mahin*, of Smith Center, argued the cause, and *J. H. Jenson*, of Oakley, was on the briefs for the appellant.

*Larry E. Oliphant,* of Chicago, Ill., argued the cause, and *Robert L. Webb,* of Topeka, *John A. Barr* and *Harvey L. Hensel,* both of Chicago, Ill., were on the briefs for the appellee.

The opinion of the court was delivered by

SMITH, J.: This was an appeal from an order of the state tax commission refusing to set aside an order of the commission making an assessment against Montgomery Ward and Company of a certain sales tax. Judgment of the district court was entered setting aside this order and holding that the company was not bound to collect and pay the tax. The state tax commission has appealed.

The facts are in a large measure undisputed, although there is a contention as to the conclusion that should be drawn from some of the facts. Montgomery Ward and Company is the appellee in this court but took the place of a plaintiff in the court below since it asked for a review of the action of the tax commission. For the sake of clarity it will be referred to here as the company. It is an Illinois corporation duly admitted to do business in Kansas. It is engaged in the business of general merchandising. In the course of this business it operates what it refers to as mail-order houses at various places in the United States and also operates retail stores within the different states. During the time with which we are concerned it operated from twenty-seven to twenty-nine retail stores in Kansas where customers would enter, see goods on the counter, purchase the goods and carry them out just as is done in any other retail store. These retail stores were registered under the provisions of G. S. 1941 Supp. 79-3601 to 79-3619, known as the Kansas sales tax act. Upon the sales about which there was no dispute as to their being state sales the sales tax has been collected and remitted to the state by the company. There were, however, certain sales that originated in these different stores upon which the company did not collect the sales tax, and hence did not remit it to the state. These were certain sales that originated at what is known as a mail-order desk, or in a few instances, an order office. There is no dispute about the manner in which these sales were made. The company maintains in each retail store a department called a mail-order desk. This is a desk where an employee of the company at the retail store is maintained to assist customers in purchasing merchandise of the company which is listed in its printed catalogue but is not carried by the store. The mail-order house carries about 100,000 items and

the retail stores carry about 10,000 to 20,000. It does not appear in this record that there is any distinction as far as the public is concerned between the person who operates the mail-order desk and the other employees of the store, although the point is made by the company that the salary of this person is charged to the mail-order part of the business of the company. The order office is different from the mail-order desk in that it is not located in a retail store, but is a small store located in a town where there is no retail store operated by the company, and is operated by two to five employees who have catalogues and some books and other information relative to merchandise carried in the company's mail-order house.

During the period involved in this litigation three to five such offices were maintained in Kansas. The amount in controversy in this case is based upon sales that were made by the company from the two places that have been described.

When the tax commission examined the books of the company it found that for a certain period of time through the medium of mail-order desks and order offices the company had sold $971,617 worth of merchandise and that the tax liability upon these sales, together with penalty and interest, amounted to $21,861.38.

The methods of making sales at the mail-order desks and mail-order offices are as follows: The customer selects the item which he wishes to purchase from the catalogue or merchandise on display. The order is then written on an order blank by an employee of the company. The blank provides a space to list the catalogue-article number of the merchandise selected, the quantity, the type of article, the size and the color, the price of each article ordered and the total amount of the order, the weight of each article ordered, the transportation charges and the total cost, including transportation charges. If the sale is for cash the customer deposits with the employee at the order office the amount of the purchase price plus the transportation charges. If it is to be a credit sale the customer makes a down payment, but in the event it is to be a C. O. D. sale the customer pays no money down. The employee fills out a receipt, which is detached from the order blank, and delivers it to the customer. If the transaction is a C. O. D. sale no receipt is given the customer. The customer does not sign any order. The receipt which is detached from the order blank and given to the customer, only in the event the sale is for cash, recites the serial number of the order and states that the order is subject to acceptance by and will be filled from Ward's mail-

order house serving this territory. In the case with which we are dealing the mail-order house is located in Kansas City, Mo.

The customer designates whether he wishes the merchandise to be delivered at the store or at his residence. Merchandise thus purchased is shipped either to the mail-order desk or mail-order office to be delivered to the customer, or to the customer direct if he so wishes.

Once the order blank for a particular customer has been filled out it is placed with other orders and mailed to the mail-order house for the merchandise to be delivered to the customer at the order desk or order office. The name of the customer is placed upon each package at the mail-order house. Sometimes several customers' orders are shipped in one package. When such packages are received at the mail-order desk or order office they are unwrapped by the clerk and each package is held until the customer calls for it.

If the mail-order house does not have the item purchased by the customer the house substitutes a like article. (It should be remembered at this point that when the words "mail order house" or "order desk" or "order office" are used these terms refer to the same company, that is, Montgomery Ward and Company, Incorporated. They are all employees and agents of this company.) In cases where a like article is substituted there is a statement attached to the article to the effect that it is not the article ordered but that the company believes the article to be of such excellent value that the customer would tell them to send it if he were present. The customer is directed to return this notice attached to the article in the event he wishes to return the article. In the event the price of an article purchased has increased from that listed in the catalogue, if such increase is five dollars or less the company fills the order and forwards it to the order desk along with a due bill for the excess amount. In such case the customer then decides whether or not he wishes to accept the merchandise at such increased price. In case of goods shipped pursuant to the plan we have described being lost or damaged in transit the company makes good such loss or damage regardless of the type of sale. In the types of sales we have described through the order desks and order houses the customer has the right on receipt of the merchandise to accept it or reject it. Whichever of these he does depends on his wishes. The company advertises that anything purchased from them must please the customer in every way or he may return it at the company's expense and they will ex-

change it or refund the customer all he has paid, including transportation charges.

On March 27, 1941, the commission of revenue and taxation made an order assessing appellee on its sales made at the mail-order desks located at the stores and at the mail-order offices in Kansas from March 6, 1940, to February 26, 1941. This assessment amounted to $21,861.38. The company filed a petition with the director of revenue for a revision of this assessment. In this petition the company contended that all these sales were consummated outside the state of Kansas and were not sales at retail within this state. The director of revenue affirmed the assessment by the sales-tax division, whereupon appellee appealed from the director's order to the state commission of revenue and taxation. The commission affirmed the order of the director. The company appealed to the district court, contending in the appeal that no part of such assessment was due and that the sales were not subject to the tax for the reason that they were not sales at retail in the state of Kansas, within the meaning of the act. The district court found that all of the sales involved were accepted or rejected by the company in Missouri and were, therefore, Missouri sales, and on this account were subject to the rules of interstate commerce, and hence not taxable. The assessment was, therefore, set aside and the cause remanded to the commission. From the court's judgment and order overruling a new trial this appeal has been taken.

The sales-tax statute is chapter 374 of the Laws of 1937 and now appears with amendments as G. S. 1941 Supp. 79-3601 to 79-3625, inclusive.

We shall first point out G. S. 1941 Supp. 79-3602 (d) and 79-3602 (e). They are in part as follows:

" 'Retailer' means a person regularly engaged in the business of selling tangible personal property at retail . . . (e) 'Retail sale' or 'sale at retail' includes all sales made within the state of tangible personal property for use or consumption and not for resale. . . ."

G. S. 1941 Supp. 79-3603, provides as follows:

"From and after June 1, 1937, for the privilege of engaging in the business of selling tangible personal property at retail in this state or rendering or furnishing any of the things or services taxable under this act, there is hereby levied and there shall be collected and paid a tax as follows: (a) A tax at the rate of 2 percent upon the gross receipts received from the sale of tangible personal property at retail within this state. . . ."

It will be seen that the tax is on retail sales within the state. There is no question but that the transactions we have described are sales. We have to decide whether these sales were made in Kansas or in Missouri. If the sales were consummated in Kansas then the company should have collected the tax on them and paid it to the state. If, on the other hand, the sales were consummated in Missouri they were not sales made within the state of Kansas and the company was not bound to collect the tax.

Briefly put, the company points out that the orders were accepted by it in Missouri, the goods were set aside for the customer in Missouri and since the customer paid the transportation charges the carrier was the agent of the customer and when the goods were delivered to the carrier this constituted delivery to the customer—hence the sales were consummated in Missouri.

This was the view taken by the trial court.

Many definitions of the word "sale" are given in the briefs of both parties. A sale of tangible goods may be said to be a transaction whereby the ownership of the property passes from one party to another for a consideration. Just when is a sale complete? There are many authorities on this. Must there be a delivery? Is the place of sale always the place where the delivery takes place? It is like any other contract, the answer to all these questions lies in what was the intention of the parties. This will be gathered from all the surrounding facts and circumstances of the particular case.

In this case we shall look further than the point where the merchandise is delivered to the carrier at the mail-order house in Kansas City for shipment to the customer. We must do this. The relationship between the company and the customer was not finished then. There was still something to do. For all either party knew at that point the transaction might never ripen into a sale. In the first place, the merchandise might never reach the customer, in which case the company had agreed to assume the loss. In the second place, the merchandise might not be the goods ordered by the customer, in which case goods had been substituted with the privilege to the customer of sending them back, and in the third place the customer might not be satisfied with the goods, in which case he had the right to return them to the company and receive any money he had paid. This record does not disclose in how many of these sales the goods were damaged or substituted or returned because not satisfactory. The important point is that there was the same under-

standing in the minds of the parties as to each one of these sales. The customer still had the right to inspect the goods and to refuse to consummate the sale.

There are two rules with reference to this general type of sales. One is known as a contract of sale or return, that is, where the sale is made with an option to return. In those cases the title passes to the buyer and the sale is completed upon delivery to the carrier regardless of the fact that the customer has a right to return the merchandise. The other is a sale on trial or approval. These are cases where the contract is to purchase certain goods if they prove to be satisfactory when delivered. In these cases the title does not pass until the buyer has expressly or impliedly expressed his approval or acceptance. (See 55 C. J. 584.) The company points to the use of the word "return" or "right of return" in the record and argues that the contract in this case was a contract of sale or return and that it did not affect the passing of title. We have concluded that the undisputed evidence in this record as to the contract was that the buyer must be satisfied and that whatever he bought must please him. We think this more clearly brings the case within the rule of sale on approval than the rule of sale or return and that the title did not pass until the buyer had expressly or impliedly expressed his approval or acceptance. Naturally the retention or use of the goods would be the implied approval. We have concluded, therefore, that the sales described in this record were Kansas sales within the meaning of the statute which has been heretofore quoted. Since we have concluded that they were Kansas sales or sales made in Kansas it is not necessary for us to discuss the question of the interstate feature of the transaction except to point out that sales of this type have been held to be assessable under local sales-tax statutes. (See matter of *Sears, Roebuck & Co. v. McGoldrick*, 279 N. Y. 184, 18 N. E. 25; *United Autographic Register Co. v. McGoldrick*, 260 App. Div. 157, 21 N. Y. S. 2d 129; *McGoldrick v. Berwind-White Co.*, 309 U. S. 33, 60 S. Ct. 388, 84 L. Ed. 565; and *Graybar Electric Co. v. Curry*, 238 Ala. 116, 189 So. 186, this case was later affirmed by the United States supreme court; see *Graybar Electric Co. et al. v. Curry*, 308 U. S. 513).

The judgment of the district court is reversed with directions to enter judgment against the company, appellant in the court below, in accordance with the views expressed herein.